Patricia Ann **TINKLE**, Appellant,

v.

**B.W. HENDERSON, M.D.,** et al., Appellees.

No. 12–86–0079–CV.

Court of Appeals of Texas, Tyler.

April 30, 1987.

Rehearing Denied May 29, 1987.

---

Blake Bailey, Bailey, Pierce & Negem, Thomas W. Hathaway, Hathaway & McClendon, Tyler, for appellant.

Forrest G. Braselton, Nacogdoches, Robert Fairchild, Fairchild, Price, Russell & Thomas, Center, for appellees.

BILL BASS, Justice.

This is an appeal from a summary judgment granted in favor of the defendant health care providers in a medical malpractice case. The primary question presented is the constitutionality of the strict limitations provisions of Tex.Ins.Code Ann. art. 5.82, § 4 (Vernon 1981) (repealed),[1] as applied to a person of unsound mind. We reverse the trial court and remand the cause for trial.

Robert Tinkle entered Memorial Hospital in Nacogdoches with persistent shoulder pain. On April 26, 1977, he underwent an arthogram of the right shoulder under the direction of his treating physicians, defendants Drs. Henderson and Jorgenson. The following day Tinkle suffered a severe

---

1. Act of June 3, 1975, ch. 330, § 1, 1975 Tex. Gen.Laws 864, 865–66, *repealed by* Medical Liability and Insurance Improvement Act, ch. 817, pt. 4, 1977 Tex.Gen.Laws 2039, 2064. For the current statute see Tex.Rev.Civ.Stat.Ann. art. 4590i, § 10.01 (Vernon Supp.1987).

morphine reaction. He was discovered in acute respiratory distress and his doctors ordered him transferred to the intensive care ward. Tinkle's arrival at the intensive care unit was delayed because his bed would not fit into the elevator. After some delay a stretcher was summoned and Tinkle was carried to intensive care. He was apparently without oxygen during the transfer. It is the plaintiff's contention that this period without oxygen left Tinkle mentally incapacitated to the extent that he has not since been able to handle his own affairs. Tinkle was discharged May 4, 1977. Although in March 1978 an attorney wrote the hospital asking for copies of Tinkle's medical records, no lawsuit was filed until 1983, and the notice required under the Tort Claims Act[2] was not given.

Plaintiff Tinkle alleges the defendant hospital was negligent in failing to check his vital signs with sufficient frequency, in continuing morphine injections despite his reaction to the drug, in failing to promptly notify his doctors of his condition, and in failing to timely and continuously administer the oxygen that, it is claimed, would have probably prevented the brain damage he suffered. Plaintiff claims the defendant doctors were negligent in ordering the surgical procedure, in failing to advise him of its hazards and in failing to promptly come to the hospital after they had been notified that he was in distress.

The defendant hospital moved for summary judgment contending the plaintiff's claim was barred, both by his failure to give notice to the hospital of the occurrence upon which his suit was based as required by the Texas Tort Claims Act, and by the limitation provisions of former art. 5.82, § 4 of the Insurance Code.

The defendant doctors also asked for summary judgment based upon their plea of limitation. The trial court granted summary judgment for all defendants.

The applicable statute of limitations is found in a repealed article of the Insurance Code:

Notwithstanding any other law, no claim against a person or hospital covered by a policy of professional liability insurance covering a person licensed to practice medicine or podiatry or certified to administer anesthesia in this state or a hospital licensed under the Texas Hospital Licensing Law, as amended (Article 4437f, Vernon's Texas Civil Statutes), whether for breach of express or implied contract or tort, for compensation for a medical treatment or hospitalization may be commenced unless the action is filed within two years of the breach or the tort complained of or from the date the medical treatment that is the subject of the claim or the hospitalization for which the claim is made is completed, except that minors under the age of six years shall have until their eighth birthday in which to file, or have filed on their behalf, such claim. *Except as herein provided, this section applies to all persons regardless of minority or other legal disability.*

Tex.Ins.Code Ann. art. 5.82, § 4 (Vernon 1981) (repealed) (emphasis supplied).

Plaintiff contends that his mental incompetency, if proven, tolled the running of the statute, and that since the summary judgment proof demonstrated the existence of a material fact issue as to his mental capacity, summary judgment was improper. Plaintiff urges that that part of the article which requires a health care liability suit to be brought within two years of the occurrence that is the basis of the claim "regardless of minority or other legal disability" is unconstitutional in its application to persons of unsound mind because it violates the open courts provision of the Texas Constitution.

In the plaintiff's view, our decision should be governed by the Texas Supreme Court's decision in *Sax v. Votteler,* 648 S.W.2d 661 (Tex.1983). In *Sax,* the Supreme Court addressed the constitutionality, as applied to a minor plaintiff, of the same absolute two-year limitation on medical malpractice actions, contained in the statute in question in this case. The Court

---

2. *See infra* note 4 and accompanying text.

held that since the statutory limitation forever foreclosed Lori Beth Sax's cause of action before she was legally able to sue, without providing a reasonable substitute, the limitation provision unconstitutionally abrogated her right to redress. 648 S.W.2d at 667. The Court rejected the argument that the child's parents could be relied upon to bring a malpractice suit within the time prescribed, reasoning that the parents might also be minors, or ignorant, lethargic or lacking in concern. *Id.*

In two significant decisions since *Sax*, the Supreme Court of Texas has held essentially the same limitation provision unconstitutional under the "open courts" provision to the extent that the limitation attempts to bar an injured person's right to sue before that person has had a reasonable opportunity to discover the wrong and bring suit. *See Nelson v. Krusen*, 678 S.W.2d 918, 922 (Tex.1984) (negligent failure to diagnose Mrs. Nelson as a genetic carrier of Duchenne muscular dystrophy); *Neagle v. Nelson*, 685 S.W.2d 11, 12 (Tex. 1985) (surgical sponge left in abdomen).

The Texas Constitution guarantees that Texas citizens bringing common law causes of action will not unreasonably be denied access to the courts. Tex.Const. art. I, § 13. Therefore "[a] statute ... that unreasonably abridges a justiciable right to obtain redress for injuries caused by the wrongful acts of another amounts to a denial of due process" under this article and is void. *Sax*, 648 S.W.2d at 665; *see Hanks v. City of Port Arthur*, 121 Tex. 202, 48 S.W.2d 944, 948 (Tex.1932).

■ *Sax* prescribed a two-part test for analyzing asserted violations of the "open courts" provision. It must be shown (1) that the litigant has an established common law cause of action, and (2) that the restriction upon that cause is unreasonable when the extent to which the restriction affects the litigant's right to redress is balanced against the purpose of the challenged statute or ordinance. *Sax*, 648 S.W.2d at 666. In determining the restrictive effect of the statutory provision at issue, the court must

also consider whether the legislature has avoided an unconstitutional result by providing a substitute remedy or by leaving a reasonable alternative at common law.[3]

In *Sax*, the child plaintiff clearly had an established cause of action for personal injuries. The general purpose of the statute was to improve the availability and affordability of liability insurance to health care providers in the wake of a perceived crisis arising from an inordinate increase in health care liability claims. While acknowledging the legitimacy of these objectives, the *Sax* court said they cannot be accomplished by a means that forever prevents minors from having their day in court to complain of medical malpractice. Since a child cannot bring a cause of action on its own, the court found that the limitation provision in the statute effectively abolished the minor's right to bring a well-established common law cause of action without providing a reasonable alternative. When balanced against the purposes of the act, the Supreme Court found so severe and sweeping a restraint to be unreasonable and therefore in violation of article 1, section 13.

It is impossible to avoid the analogy between the situation of the child plaintiff in *Sax* and the arguably incompetent plaintiff in this case. Traditionally the interests of minors, incompetents, and other helpless persons are viewed in law as substantially similar, and both the substantive law and the rules of procedure accord them comparable treatment. In many respects, mentally incompetent persons present a more compelling case for legal protection. They are frequently less communicative, more vulnerable and dependent than children. The opinion of the *Sax* court, that a suit by the parents for the benefit of the child was not an adequate alternative to protect the child's rights, applies with even greater force to the person of unsound mind. The mentally incompetent are less likely than children to have someone intimately interested in their welfare and inclined to act in their behalf. Those persons who might be

---

3. *Lebohm v. City of Galveston*, 154 Tex. 192, 275 S.W.2d 951, 955 (1955); *Middleton v. Texas* *Power & Light Co.*, 108 Tex. 86, 185 S.W. 556, 560–61 (1916).

expected to act in the incompetent's behalf as next friend are, if anything, more liable than a child's parents to be "ignorant, lethargic, or lack concern."

Tinkle did not have a guardian at the time of the claimed injury. It is alleged that Tinkle's mental incapacity proceeds from the very acts of malpractice which form the basis of his suit. Dr. Gary Mears, a psychologist, maintains his impairment has been continuous and uninterrupted since the time of the alleged injury. It is apparent that a disputed fact issue exists as to whether Tinkle was mentally incapacitated.

■ "In passing upon the constitutionality of a statute, we begin with a presumption of validity." *Smith v. Davis,* 426 S.W.2d 827, 831 (Tex.1968). And we are mindful that an intermediate appellate court should not hold a statute unconstitutional "unless such grounds are clear and reasonably certain." *Wells v. Hames,* 464 S.W.2d 393, 395 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.). However, we believe our course is clearly mandated by the Supreme Court's decision in *Sax v. Votteler.* We therefore hold the limitation provision of Act of June 3, 1975, ch. 330, § 1, 1975 Tex.Gen.Laws 864, 865–66 (formerly article 5.82, section 4 of the Insurance Code), *repealed by* Medical Liability and Insurance Improvement Act, ch. 817, pt. 4, 1977 Tex.Gen.Laws 2039, 2064, violative of the open courts provision of our Constitution when it operates to bar the cause of action for medical malpractice brought by one who has remained continuously mentally incompetent from the time of injury until suit is filed.

■ Since a material fact issue exists as to whether the plaintiff was so incapacitated, summary judgment on the grounds of limitation was improper.

Another possible basis for the summary judgment in favor of the defendant hospital is the admitted failure of the plaintiff to give notice of injury within six months of the date of the incident from which the injury arose as required by the Texas Tort Claims Act.[4]

The common principle underlying the Supreme Court's decisions construing the open courts provision is that the legislature has no power to make a remedy contingent upon an impossible condition. *Nelson v. Krusen,* 678 S.W.2d 918, 921 (Tex.1984). Notice provisions assume the existence of a person capable of complying. *McCrary v. City of Odessa,* 482 S.W.2d 151, 153 (Tex. 1972). The requirement of notice from an infant or one too incapacitated to give notice as a condition to recovery is to require an impossible thing and violates the due process guarantees of the Texas Constitution. *Hanks v. City of Port Arthur,* 121 Tex. 202, 48 S.W.2d 944 (1932). On this basis our courts have excepted minors and those unable to give notice because of physical or mental incapacity from the general application of the notice requirements in city charters and ordinances as well as the Texas Tort Claims Act, and excused noncompliance until the removal of their disabilities. *McCrary v. City of Odessa,* 482 S.W.2d 151 (Tex.1972); *City of Houston v. Torres,* 621 S.W.2d 588 (Tex.1981); *Denton v. Mathes,* 528 S.W.2d 625 (Tex. Civ.App.—Fort Worth 1975, writ ref'd n.r. e.); *County of El Paso v. El Paso County Sheriff's Deputies Ass'n, Inc.,* 678 S.W.2d 122 (Tex.App.—El Paso 1984, no writ). Tinkle's asserted incapacity, if proven, would excuse his noncompliance. Since a material fact issue exists as to Tinkle's mental incapacity, summary judgment should not have been granted on the basis of the plaintiff's failure to give the notice required by the Tort Claims Act.

The judgment is reversed and the cause remanded to the trial court for further proceedings.

---

4. Texas Tort Claims Act, ch. 292, § 16, 1969 Tex.Gen.Laws 874, 878, *repealed and recodified by* Act of June 16, 1985, ch. 959, §§ 1, 9(1), 1985 Tex.Gen.Laws 3242, 3305, 3322; *see* Tex.Civ. Prac. & Rem.Code Ann. § 101.101 (Vernon 1986).