Kristine Lizabeth JONES f/k/a Freeda Jones and Paul D. Jones, Appellants,

v.

Howard B. MILLER, M.D., Appellee.

No. 14–96–01384–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 22, 1998.

Rehearing Overruled Feb. 26, 1998.

John C. Osborne, Houston, for appellants.

Marc A. Sheiness, Tina Snelling, Houston, for appellee.

Before LEE, AMIDEI and ANDERSON, JJ.

## OPINION

AMIDEI, Justice.

Kristine Lizabeth Jones (Kristine) and her husband, Paul D. Jones, appeal from a partial summary judgment for Howard B. Miller, M.D. Kristine sued appellee, nine other doctors, and twelve medical facilities for malpractice by failing to diagnose the cause of her multiple personality disorder. Her husband, Paul, sued for loss of consortium arising out of the same conduct. In one point of error, appellants contend the trial court erred in granting summary judgment on the two-year statute of limitations in article 4590i, section 10.01, Texas Revised Civil Statutes Annotated, because Dr. Miller's summary judgment proof is insufficient to negate her claim of her mental incompetence that tolled limitations. We affirm.

## I. BACKGROUND.

Appellant was referred to Charter Hospital by her therapist in Houston, Texas, for

further treatment of dissociative identity. Dr. Miller is a licensed psychiatrist and first saw appellant April 9, 1992, at Charter Hospital. Appellant was discharged from the hospital on April 18, 1992. Appellant filed suit on August 10, 1995, three years and four months later. Appellant sued Dr. Miller for malpractice contending his diagnosis of multiple personality disorder caused by satanic ritual abuse was "baseless."

## II. SUMMARY JUDGMENT.

Dr. Miller moved for summary judgment on the grounds that: (1) Kristine's claims were barred by the two year statute of limitations under article 4590i, § 10.01, Texas Revised Civil Statutes Annotated (Vernon Supp.1997); (2) Dr. Miller was not negligent; and (3) Dr. Miller's treatment did not proximately cause Kristine's injuries, if any. The trial court's order granting summary judgment does not state the ground on which it was granted.

In her sole point of error, appellant contends the trial court erred in granting summary judgment on the statute of limitations because Dr. Miller did not controvert appellant's assertions that she was mentally incompetent. Appellant argues her summary judgment evidence establishes that she was mentally incompetent to manage her affairs from June 3, 1990, until suit was filed in 1995. Appellant argues she was under a legal disability and the two-year statute of limitations was tolled, citing *Tinkle v. Henderson*, 730 S.W.2d 163, 166 (Tex.App.—Tyler 1987, writ ref'd) as authority.

### A. Standard of Review.

In order to prevail on summary judgment, the movant must disprove at least one of the essential elements of each of the plaintiff's causes of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). This burden requires the movant to show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). In determining whether a material fact issue exists to preclude summary judgment, evidence favoring the nonmovant is taken as true, and all reasonable inferences are indulged in favor of the nonmovant. *Id.; see also Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995). Any doubt is resolved in favor of the nonmovant. *Nixon*, 690 S.W.2d at 548–49; *see also Doe*, 907 S.W.2d at 477.

To entitle Dr. Miller to the summary judgment granted him in this case, the summary judgment proof must conclusively establish that the statute of limitations barred this lawsuit. *See Rowntree v. Hunsucker*, 833 S.W.2d 103, 104 (Tex.1992). If the nonmovant raises fact issues suspending limitations, the movant must conclusively negate these fact issues to show its entitlement to summary judgment. *Zale Corporation v. Rosenbaum*, 520 S.W.2d 889, 891 (Tex.1975).

When a summary judgment does not specify the grounds upon which the trial court granted it, the reviewing court will affirm the judgment if any one of the theories advanced in the motion is meritorious. *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

### 2. Applicable Law.

The pertinent part of Article 4590i, § 10.01, Texas Revised Civil Statutes Annotated, provides:

Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed.... Except as herein provided, this subchapter applies to all persons regardless of minority or other legal disability.

The two-year period starts on one of three dates: (1) when the breach or tort occurs; or (2) on the date the health care treatment complained of is completed; or (3) on the date the hospitalization complained of is completed. *Rowntree*, 833 S.W.2d at 104; *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex.1987); *Fiore v. HCA Health Servs. of Tex., Inc.*, 915 S.W.2d 233, 236 (Tex.App.—

Fort Worth 1996, writ denied). When the injury results from a negligent course of treatment, the limitations period begins on the last date of treatment. *Kimball,* 741 S.W.2d at 371.

### C. The Summary Judgment Evidence.

**1. Appellee's Evidence.** In support of his motion for summary judgment, Dr. Miller submitted his affidavit stating he first saw Kristine on April 9, 1992, at Charter Hospital in Plano. He stated Kristine had been referred to Charter Hospital by her therapist in Houston, Texas, for "further treatment of her problems of Dissociative Identity." Dr. Miller stated she "had a history of several years of in-patient and out-patient therapy for alcohol abuse and Dissociative Identity." He stated Kristine "had an alleged history of childhood ritualistic cult abuse involving the grandfather and recent memories of abuse by her mother." He set out the standard of care of such psychiatric patients and stated such standard of care "was to change her medication and have her undergo treatment both on an individual as well as group basis for her Dissociative Identity." He stated Kristine made two demands for release on the grounds she was not receiving proper treatment and was finally discharged on April 18, 1992. We find the two-year statute of limitations began on the last day of treatment, April 18, 1992. *Kimball,* 741 S.W.2d at 371.

**2. Appellant's Evidence.** Kristine responded to Dr. Miller's motion for summary judgment with the following documents.

**(a)** An unsworn Social Security Notice, dated April 8, 1993, granting her disability benefits, with an explanation attached stating the "evidence shows the earliest date you had a disabling impairment was 04/01/92, when your mental condition worsened." The disabling condition itself was not set out in the "Explanation of Determination" other than to repeat her contention that she was "disabled because of chronic fatigue, major depression and multiple personality disorder" that Kristine said began on 07/30/89. We find the reports from Social Security are unsworn hearsay and incompetent summary judgment proof. *Hall v. Rutherford,* 911

S.W.2d 422, 426 (Tex.App.—San Antonio 1995, writ denied).

**(b)** Affidavit of Edwin Johnstone, M.D., a psychiatrist, who stated Kristine was "rendered legally incompetent" by her diagnosis of multiple personality disorder and "her related problems as above-described." Dr. Johnstone stated she was rendered incompetent for a period of time which would "certainly stem from June, 1990 up to September, 1994." He stated: "I believe that Dr. Miller's treatment of Ms. Jones fell below the standard of care that a reasonably prudent psychiatrist would have exercised under the same or similar circumstances. Further, I believe that this breach of the standard of care by Dr. Miller was a direct and proximate cause of the injuries to the plaintiff." He further stated Dr. Miller breached "the standard of care by diagnosing a condition that did not exist in the patient—a condition that Dr. Miller knew or should have known was a fictional product elaborated by a gullible patient in a highly suggestive state. Furthermore, Dr. Miller prescribed a mode of treatment that was based on accepting the invalid condition—a mode of treatment that prolongs treatment and induces the patient to accept a life of chronic mental disability based on being the victim of nonexistent traumas."

Dr. Johnstone did not identify the appropriate medical standard of care at the time Dr. Miller examined and diagnosed Kristine and his testimony raised no material fact issue as to Dr. Miller's negligence. *White v. Wah,* 789 S.W.2d 312, 316 (Tex. App.—Houston [1st Dist.] 1990, no writ). In a medical malpractice cause of action, the plaintiff must prove by competent testimony that the defendant's negligence proximately caused the plaintiff's injury. *Id.* at 315. To do so, the plaintiff must prove four elements: (1) a duty by the physician to act according to a certain standard; (2) a breach of the applicable standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury. *Id.* A defendant is entitled to prevail on his motion for summary judgment if he establishes, as a matter of law, that at least one essential

element of the plaintiff's cause of action does not exist. *Id.*

Dr. Johnstone stated that he had reviewed the following information in reaching his opinion: "relevant medical records, information revealed to me by her attorney, John C. Osborne, pleadings and discovery in this case, and the plaintiff's mental health history." Based on a review of these documents and statements, he concluded Kristine was "rendered legally incompetent." This statement is nothing more than a legal conclusion on the part of Dr. Johnstone and was legally insufficient to raise a material fact issue of Kristine's mental incompetence. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991) (testimony comprised only of legal conclusions is insufficient to support summary judgment as a matter of law); *McDuff v. Chambers*, 895 S.W.2d 492, 500 (Tex.App.—Waco 1995, writ denied). For the reasons stated, we find Dr. Johnstone's affidavit to be incompetent summary judgment proof.

 (c) Affidavit of Dr. Robert L. Woodham, a psychiatrist, who treated Kristine from September 19, 1994, to the date of his affidavit, February 5, 1996. Dr. Woodham stated Kristine "was mentally very disturbed and was laboring under a set of fixed, false beliefs, or delusions, that severely compromised her ability to think and act in a rational manner." Dr. Woodham stated: "these false beliefs *may have been contributed to by prior* regressive . . . treatments she underwent." He further stated: "She *seemed* incapable of managing her affairs . . . ." Dr. Woodham concluded: "Mrs. Jones clearly met many *legal criteria* for being deemed entirely *legally incompetent* during this period from 1990 to early 1995." Dr. Woodham's opinion of legal incompetence is based on treatments that *may* have contributed to her problems, and is therefore speculative. To constitute evidence of causation, an expert opinion must rest in reasonable medical probability. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 500 (Tex.1995). This rule applies whether the opinion is expressed in testimony or in a medical record, as the need to avoid opinions based on speculation and conjecture is identical in both situations. *Id.* Reasonable proba-

bility is determined by the substance and context of the opinion, and does not turn on semantics or on the use of a particular term or phrase. *Id.*

The context of Dr. Woodham's affidavit does not indicate that Kristine became "legally incompetent" because of *any* prior treatment by Dr. Miller. Dr. Woodham does not specify *which* prior treatment by what doctor caused what part of her condition. He speculates only that the prior unspecific treatment *may* have contributed to her condition. Therefore, there is no evidence that Kristine's incompetence, if any, was caused by *any* prior treatment by Dr. Miller. *Id.*

Dr. Woodham stated his opinion was based on his treatment of Kristine from September 19, 1994, to the present and facts she revealed to him during her treatment. This would qualify as a basis for an opinion. He also stated that his opinion is also based on "facts I have obtained from other therapists she was concurrently in treatment with, relevant medical records, and information from her attorney, John C. Osborne."

The statement that Kristine was "entirely legally incompetent during this period from 1990 to early 1995" is nothing more than a legal conclusion on the part of Dr. Woodham and was legally insufficient to raise a material fact issue of Kristine's mental incompetence. *Anderson*, 808 S.W.2d at 55. For the reasons stated, we find Dr. Woodham's affidavit to be incompetent summary judgment proof.

 (d) Affidavit of Paul Jones, Kristine's husband and a party to this suit, is a factual recitation of the various visits to the various doctors and hospitals by Kristine over the years. His statement that Kristine was "incapable of managing her own affairs and was often depressed" is the only statement in his affidavit concerning her alleged incompetence. This statement is also a legal conclusion and is insufficient to support summary judgment as a matter of law. *McDuff*, 895 S.W.2d at 500. Furthermore, Paul's lay testimony is insufficient to refute Dr. Miller's expert testimony in support of his motion for summary judgment. *Id.* For these reasons,

Mr. Jones' affidavit is incompetent summary judgment proof.

### D. Application of the Law to the Facts.

 Appellants contend the statute of limitations provided in section 10.01, article 4590i, Texas Revised Civil Statutes Annotated, was tolled by the fact Kristine was "legally incompetent" from June 1990 thru 1995. Not only does article 4590i set forth its statute of limitations "notwithstanding any other law," it also provides that "except as herein provided, this subchapter applies to all persons regardless of minority or other legal disability." It is well settled that with the passage of article 4590i, known as the Medical Liability and Insurance Improvement Act, the legislature intended to adopt an absolute two-year limitations period and to abolish the discovery rule for medical malpractice claims. *Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985); *Neagle v. Nelson,* 685 S.W.2d 11, 12–15 (Tex.1985).

 Section 16.001, Texas Civil Practices and Remedies Code, is the only general statutory tolling provision for persons under a legal disability. Section 16.001, provides, in pertinent part:

(a) For the purposes of this subchapter, a person is under a legal disability if the person is:

\* \* \* \* \* \*

(2) of unsound mind.

The Texas Supreme Court has held that general tolling statutes are inapplicable to medical malpractice claims under article 4590i, Texas Revised Civil Statutes Annotated. *See Hill v. Milani,* 686 S.W.2d 610, 611 (Tex.1985) (holding former article 5537, tolling limitations by absence from State, is part of the "other law" expressly made inapplicable by operation of article 4590i, section 10.01).

The court of appeals in *Desemo v. Gafford,* 692 S.W.2d 571, 574 (Tex.App.—Eastland 1985, writ ref'd n.r.e.), declined to apply the unsound mind tolling provision of article 5535, Texas Revised Civil Statutes Annotated (Vernon 1985) (now Tex. Civ. Prac. & Rem. Code Ann. § 16.001 (Vernon 1986 & Supp. 1997)) to medical malpractice claims under article 4590i. The Dallas Court of Appeals has also declined to apply this tolling provision to medical malpractice claims. *Waters v. Del–Ky, Inc.,* 844 S.W.2d 250 (Tex.App.—Dallas 1992, no writ). In *Liggett v. Blocher,* 849 S.W.2d 846, 850–52 (Tex.App.—Houston [1st Dist.] 1993, no writ), the court of appeals held that section 16.001 is also part of the "other law" to which article 4590i, section 10.01, refers ("Notwithstanding any other law . . .") and declined to apply the statutory tolling provision of article 16.001 to article 4590i, section 10.01. *Id.* at 850–51. We also find the section 16.001, Texas Civil Practices and Remedies Code, is part of the "other law" to which article 4590i, section 10.01, refers and also decline to apply this tolling provision to cases filed under article 4590i.

Generally, the term "unsound mind" refers to a legal disability, although it is not limited to persons who are adjudicated incompetent. *Casu v. CBI Na–Con, Inc.,* 881 S.W.2d 32, 34 (Tex.App.—Houston [14th Dist.] 1994, no writ). "Unsound mind" is not defined in the Texas Civil Practice and Remedies Code. On August 10, 1995, the date this suit was filed, the Texas Probate Code defined persons of unsound mind as "persons non compose mentis, mentally disabled persons, insane persons, and other persons who are mentally incompetent to care for themselves or manage their property and financial affairs." Tex. Prob.Code § 3(y) (Vernon 1980 & Supp. 1995). Effective September 1, 1995, section 3(y) was repealed and section 3(p) was added as follows, in pertinent part:

(p) "Incapacitated" or "Incapacitated person" means:

(1) a minor;

(2) an adult individual who, because of a physical or mental condition, is substantially unable to provide food, clothing, or shelter for himself or herself, to care for the individual's own physical health, or to manage the individual's own financial affairs.

Also, in general, "persons of unsound mind" and "insane persons" are synonymous. *See Lowery v. Lowery,* 386 S.W.2d 194, 197 (Tex.Civ.App.—Tyler 1965, no writ); *Reiche v. Williams,* 183 S.W.2d 587, 591 (Tex.Civ.

App.—San Antonio 1944), *writ ref'd w.o.m.,* 143 Tex. 365, 185 S.W.2d 420 (1945).

In previous cases in which the limitations period was tolled or possibly tolled due to a mental condition caused by the accident that was the basis of the lawsuit, the injury was substantial and prolonged. *See Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 753 (Tex.1993) (severe and permanent head injury); *Casu,* 881 S.W.2d at 34 (acute psychosis with significant paranoid features caused by exposure to chemical explosion); *Palla v. McDonald,* 877 S.W.2d 472, 477 (Tex.App.—Houston [1st Dist.] 1994, no writ) (permanent brain damage and blindness caused by medical treatment); *Felan v. Ramos,* 857 S.W.2d 113, 116 (Tex.App.—Corpus Christi 1993, writ denied) ( unconscious from date of surgery till death two years later); *Tinkle v. Henderson,* 730 S.W.2d 163, 165 (Tex.App.—Tyler 1987, writ ref'd n.r.e.) (brain damage caused by oxygen deprivation).

Appellants argue *Tinkle v. Henderson* applies to this fact situation and tolls the statute of limitations in article 4590i. In *Tinkle,* the Tyler Court of Appeals reversed summary judgment, holding the limitations section of article 4590i is unconstitutional when it operates to bar the cause of action for medical malpractice by one whose mental impairment has been *continuous and uninterrupted* from the time of the injury until suit is filed. *Tinkle,* 730 S.W.2d at 167. The plaintiff in *Tinkle* suffered brain damage from oxygen deprivation resulting from a severe morphine reaction. *Id.* at 165–65. The court in *Tinkle* also noted that the plaintiff alleged that his incompetence was *actually due to the negligence* of the doctor and hospital *Id.* at 167. This is not the situation in this case. There are no allegations the appellee *caused* the appellant's unsound mind. Nor is there evidence of brain damage like that which rendered the *Tinkle* plaintiff *totally* incapacitated. *See Liggett,* 849 S.W.2d at 852.

*Ruiz v. Conoco* was a suit by Ruiz who suffered severe and permanent head injuries while working for Conoco, and was not a malpractice suit under article 4590i. *Ruiz,* 868 S.W.2d at 753. The Supreme Court held that the two-year limitation period in section 16.003, Texas Civil Practices and Remedies Code, was tolled by Ruiz' mental incompetency under the provisions of 16.001, Texas Civil Practices and Remedies Code. *Id.* at 756. The injuries in *Ruiz* were totally disabling and were caused by the defendant. As stated in this opinion, the Texas Supreme Court has held that general tolling statutes are inapplicable to medical malpractice claims. *See Hill,* 686 S.W.2d at 611. The tolling provisions of section 16.001 do not apply to cases filed under article 4590i. *Id.; Liggett,* 849 S.W.2d at 850–51; *Waters,* 844 S.W.2d at 256; *Desemo,* 692 S.W.2d at 574.

*Casu* was not a medical malpractice case under 4590i. *Casu,* 881 S.W.2d at 33. The plaintiff in *Casu* was rendered mentally incompetent by a chemical accident and the limitations under section 16.003, Texas Civil Practices and Remedies Code, was tolled by the unsound mind provisions of section 16.001, under the holding in *Ruiz,* 868 S.W.2d at 756. *Id.* at 34. *Felan,* 857 S.W.2d at 115–16, was a medical malpractice case under 4590i, brought under the wrongful death and survival statutes against the doctor and the hospital. In *Felan,* the patient was rendered unconscious in surgery and died without regaining consciousness. In that case, the *Felan* court applied the reasoning in *Tinkle* and found article 4590i, section 10.01, violated the open courts provision of the Texas Constitution article I, section 13, under the facts in that case. *Id.* at 117. In *Palla,* 877 S.W.2d at 474, the plaintiff developed permanent brain damage and cortical blindness during her treatment at the hospital. The court of appeals applied the holding in *Tinkle* and found a material fact issue existed regarding whether the appellant had remained "continuously mentally incompetent from the time of injury until suit." *Id.* at 477. The mental disabilities in *Felan, Palla,* and *Tinkle* were *caused* by the medical procedures and were **totally** disabling. This is not the case here.

In this case, appellant has not alleged that Dr. Miller *caused* her alleged mental problems nor has she alleged the application of the section 10.01 is unconstitutional under the open courts provision of the Texas Constitution. She has alleged that *Tinkle* ap-

plies to her case under the circumstances. We disagree.

The summary judgment proof furnished by appellant in her response to Dr. Miller's motion for summary judgment is incompetent for the reasons stated in this opinion. The Social Security letter and attachment is unsworn; therefore, it is hearsay and incompetent. Dr. Johnstone's affidavit is incompetent because it is conclusory. Dr. Woodham's affidavit is incompetent because it is speculative and conclusory. Mr. Jones' affidavit is incompetent because it is conclusory and lay testimony cannot be used to controvert expert testimony. There is nothing in the affidavits filed with the response to Dr. Miller's motion for summary judgment that would create a fact issue on Kristine's alleged incompetence.

The nonmovant must present some competent summary judgment *evidence* before a court can determine fact issues preclude the granting of summary judgment. *Liggett,* 849 S.W.2d at 852. Accordingly, we find appellant has presented no evidence to raise a fact issue that would preclude summary judgment in favor of Dr. Miller on the statute of limitations in section 10.01, article 4590i. We hold that section 10.01, article 4590i, bars any action by appellant against Dr. Miller because appellant did not file suit within two years of the date she was last treated by Dr. Miller. Appellants sole point of error is overruled and the judgment of the trial court is affirmed.

LEE, Justice, concurs in the result only.