Barbara WEST, as next Friend
of James J. Reid, and James J.
Reid, Individually, Appellants,

v.

Norman H. MOORE, M.D., Appellee.

No. 14–00–01478–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 31, 2002.

James F. Martin, Greer & Martin, L.L.P., Houston, for appellants.

Michael C. Feehan, Dunn, Kacal, Adams, Pappas & law, P.C., Houston, Tamara Leigh Sheffield, Lucille Anderson Reiter, for appellee.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

JOHN S. ANDERSON, Justice.

In this medical malpractice case, filed more than sixteen years after the alleged injury, appellants Barbara West, as next friend of James J. Reid, and James J. Reid, individually, appeal from a take-nothing summary judgment based on the statute of limitations found in section 10.01 of the Medical Liability and Insurance Improvement Act.[1] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 10, 1983, Reid, complaining of a penile discharge, saw appellee, Dr. Norman Moore. A gram stain test was positive, indicating syphilis, and Moore prescribed medication. According to Reid's mother, Barbara West, Moore never recommended any follow-up care. Instead, when West asked Moore whether follow-up care was necessary, Moore said not to worry about it, that he was going to give Reid a shot of antibiotics, and that Reid would be fine. Reid's medical record indicates he saw Moore again, but there is no indication Reid again complained of the discharge. Reid moved to Atlanta around 1986.

West believes Reid began having some memory problems and mumbled speech as early as 1991. In September 1997, West went to Atlanta and found Reid's apartment in shambles and Reid appearing malnourished and disheveled. According to West, Reid mumbled, repeated himself frequently, had sweats and clammy skin, pain in his legs, and poor memory. Reid returned to Texas and stayed with West. On December 4, 1997, Reid saw a doctor at the Harris County Hospital District Clinic, where they ran some tests. On December 7, Reid and West went to the City of Houston Health Clinic, where a doctor gave Reid a shot, said Reid's syphilis count was very high, and had Reid return three days later for a second shot. While at the second clinic, West watched a film on syphilis and neurosyphilis and was astonished at the lack of care provided by Moore.

On January 9, 1998, Reid had a spinal tap, which was positive for neurosyphilis. West stated she learned later in January

1. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 10.01 (Vernon Supp.2002).

1998 that Reid had actually had neurosyphilis.[2]

On January 21, 2000, West, as next friend of Reid, and Reid individually sued Moore alleging that, in 1983, he failed to treat Reid's syphilis. West pleaded the "discovery rule" and mental incompetence as suspending the statute of limitations.

Moore answered, pleading, among other matters, limitations under Texas Revised Civil Statutes article 4590i, section 10. In June 2000, Moore filed a motion for summary judgment on the grounds of limitations. Moore alleged the treatment at issue occurred October 10, 1983, and West and Reid were required to file their action no later than two years after that date. In support of the motion, Moore attached his treatment record on Reid showing the October 10, 1983 treatment date.

West and Reid responded, arguing article 4590i is unconstitutional (1) because Reid did not have a reasonable opportunity to discover his injury and wrong within two years of the alleged date of negligence and could not possibly have discovered the injury or wrong within two years and (2) because Reid has been incompetent since at least 1995, and therefore, the unsound mind doctrine tolled the statute of limitations "from the time the cause of action accrued to the present." In support of their response, West and Reid attached the affidavits of West, Reid, and Larry Pollock, Ph.D. In his affidavit, Reid swore he believed he was competent to make the affidavit and described his symptoms, diagnosis, and treatment in 1983.

Pollack, whose area of speciality is neuropsychology, examined Reid and reviewed Reid's medical records reflecting the neurosyphilis diagnosis. Pollock concluded

Reid has organic brain damage caused by neurosyphilis. Pollock also concluded:

The neurosyphilis has caused Mr. Reid to be of unsound mind, meaning that a) he is not able to adequately care for himself on a day-to-day basis; b) his ability to function is equivalent to the ability of a young adolescent to function; c) he is not able to care for his daily financial needs and is not able to make financial decisions that an independent adult should be able to make; and d) he is dependent upon his mother to function on a day-to-day basis.

[ ]Based upon my knowledge about the progression of neurosyphilis, Mr. Reid has probably been of unsound mind as described above since at least 1995 which is two years prior to major manifestations of the illness. His current condition is permanent.

[ ]Part of the disease process of neurosyphilis causes patients to fail to recognize that they have any disability or are of unsound mind.... It is my opinion that from the time James Reid first developed any signs or symptoms of neurosyphilis, the disease process in and of itself would have prevented him and did prevent him from understanding that he had a medical problem or that he should seek treatment for the medical problem. From whatever period of time the first signs and symptoms of neurosyphilis first began in Mr. Reid, he was not mentally competent to recognize that he had neurosyphilis.

Moore replied, arguing West and Reid failed to exercise due diligence because they waited over 24 months after discovering the cause of action before they filed suit. The trial court granted Moore's summary judgment motion.

**2.** In a notice of claim letter dated November 4, 1999, West and Reid's attorney stated Reid was diagnosed with neurosyphilis on or about November 7, 1997.

West and Reid then filed a request for rehearing, motion for new trial, and request to supplement summary judgment evidence, attaching the affidavit of Armando Correa, M.D., as well as those of West, Reid, and Pollock. Based on West and Reid's affidavits, Correa opined Moore's treatment of Reid was below the standard of care. He also opined Reid's "neurosyphilis has caused him severe brain damage that has resulted in him being of unsound mind." Four days later, and two days before the scheduled hearing, West and Reid filed an amended affidavit from Correa, which addressed the progression of neurosyphilis and the effect on the brain. The court did not sign the attached order granting leave to file the late affidavit.

Moore responded, objecting to Correa's affidavit because it was not timely filed and was conclusory. Following a telephone hearing, the trial court granted West and Reid's new trial motion, overturned the summary judgment, and reset the motion for summary judgment.

West and Reid next filed an additional reply to and notice of filing additional evidence in opposition to the motion for summary judgment. Attached was Correa's amended affidavit and an affidavit from Pollock to supplement his original affidavit. Although Moore states he filed a brief on the issues in response, the brief is not part of the appellate record. The trial court again granted Moore's motion for summary judgment ordering West and Reid take nothing.

## DISCUSSION

In a single point of error, West and Reid argue the trial court erred in granting Moore's motion for summary judgment. Summary judgment is proper only if the movant shows there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *Nixon v. Mr.* *Property Mgmt., Co.,* 690 S.W.2d 546, 548 (Tex.1985). In reviewing a summary judgment, this court takes all proof favorable to the non-movant as true, indulging every reasonable inference and resolving any conflicts in the evidence in the non-movant's favor. *Id.* at 548–49.

■ A party moving for summary judgment on the basis of limitations must conclusively establish the bar of limitations. *See Jennings v. Burgess,* 917 S.W.2d 790, 793 (Tex.1996); *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983); *Zale Corp. v. Rosenbaum,* 520 S.W.2d 889, 891 (Tex.1975). To satisfy this burden, the movant must conclusively negate any relevant tolling provision the non-movant asserted in the trial court. *See Diaz v. Westphal,* 941 S.W.2d 96, 98 (Tex.1997); *Jennings,* 917 S.W.2d at 793.

■ Section 10.01 of the Texas Medical Liability and Insurance Improvement Act establishes an absolute two-year statute of limitations for medical malpractice claims regardless of when an injured party learns of his injuries. *Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985); *see* TEX. REV.CIV. STAT. ANN. art. 4590i, § 10.01 (Vernon Supp.2002). Section 10.01 abolishes the discovery rule in cases governed by article 4590i. *Morrison,* 699 S.W.2d at 208. Additionally, section 10.01 "applies to all persons regardless of minority or other legal disability." TEX.REV.CIV. STAT. ANN. art. 4590i, § 10.01 (Vernon Supp.2002). Thus, Texas Civil Practice and Remedies Code section 16.001, which tolls limitations for persons of "unsound mind," does not apply to cases filed under article 4590i. *Jones v. Miller,* 964 S.W.2d 159, 164 (Tex. App.-Houston [14th Dist.] 1998, no pet.); *see* TEX. CIV. PRAC. & REM.CODE ANN. § 16.001(a)(2) (Vernon Supp.2002).

■ To avoid limitations under section 10.01 of the Medical Liability Act, an

injured party must file a medical malpractice claim within two years from one of the following events: (1) the date the breach or tort occurred; (2) the date the treatment that is the subject of the claim is completed; or (3) the date the hospitalization for which the claim is made is completed. TEX.REV.CIV. STAT. ANN. art. 4590i, § 10.01 (Vernon Supp.2002); *Diaz*, 941 S.W.2d at 99. A plaintiff, however, may not choose among alternative limitation periods in bringing his claim. *Bala v. Maxwell*, 909 S.W.2d 889, 891 (Tex.1995). If the specific date of the breach or tort is ascertainable, limitations begins on that date. *Id.*[3]

■ In the present case, the alleged breach was Moore's failure to properly treat the syphilis, failure to recommend regular follow-up treatment and exams, and failure to report the syphilis to appropriate authorities. That breach occurred on October 10, 1983. Applying the two-years-from-the-date-of-the-breach measure in section 10.01, we conclude limitations expired on October 10, 1985.

■ West and Reid, however, argue article 4590i, as applied to them, violates the open courts provision of the Texas Constitution for two reasons.[4] First, they argue article 4590i violates the open courts doctrine because Reid did not have a reasonable opportunity to discover his injury and wrong within two years of the alleged date of the negligence and because Reid could not possibly have discovered the injury or wrong within two years. *See Work v. Duval*, 809 S.W.2d 351, 353 (Tex.App.-Houston [14th Dist.] 1991, no writ) (stating, under the open courts provision of Texas

Constitution article I, section 13, legislature has no power to make remedy by due course of law contingent on an impossible condition). Second, they argue article 4590i violates the open courts doctrine because of Reid's mental incompetency. *See Felan v. Ramos*, 857 S.W.2d 113, 117 (Tex. App.-Corpus Christi 1993, writ denied) (holding, because alleged wrongful act resulted in plaintiff remaining incompetent until death, under open courts doctrine, plaintiff should not have been bound by two-year statute of limitations in article 4590i, section 10.01). West and Reid must raise a fact issue concerning the applicability of the open courts provision to avoid a summary judgment on limitations. *See Earle v. Ratliff*, 998 S.W.2d 882, 889 (Tex. 1999).

■ To establish an open courts violation, plaintiffs must satisfy a two-part test. They must show they have a well-recognized common-law cause of action that is being restricted, and they must show the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 355 (Tex.1990). When an open courts challenge preserves a plaintiff's claim for an exception to the two-year statute of limitations, the claimant has only a "reasonable time" to investigate, prepare, and file suit after discovering her injury. *See Gagnier v. Wichelhaus*, 17 S.W.3d 739, 745 (Tex. App.-Houston [1st Dist.] 2000, pet. denied). "Reasonableness is a question of fact unless the evidence, 'construed most favorably for the claimant, admits no other conclusion.'" *Gagnier*, 17 S.W.3d at 745

---

3. As used in § 10.01 of the Medical Liability Act, the term "breach or tort" refers to the act (tort) or omission (breach of duty) which forms the basis of the law suit. *See Morrison*, 699 S.W.2d at 208.

4. The "open courts" provision of the Texas Constitution provides in part: "All courts shall be open, and every person for an injury done to him, his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13.

(quoting *Neagle v. Nelson,* 685 S.W.2d 11, 14 (Tex.1985) (J. Kilgarin concurring)); *see Jones,* 964 S.W.2d at 161(stating, if non-movant raises fact issues suspending limitations, movant must conclusively negate these fact issues to show its entitlement to summary judgment).

In the present case, over 16 years passed between commission of the alleged tort (in 1983) and filing of the lawsuit (in 2000). The summary judgment proof reflects (1) Reid was not initially rendered mentally incapacitated by the alleged tort and did not become mentally incapacitated for over ten years, (2) the alleged tort was not inherently undiscoverable, (3) Reid's next friend noticed Reid's memory and behavioral problems at least eight years (in 1991) before filing suit, (3) Reid was "of unsound mind" continuously for five years before filing suit (from 1995), and (4) Reid's next friend affirmatively discovered Reid still had syphilis in his blood in December 1997, over two years before filing suit in 2000.

■ We initially question whether competent summary judgment proof raises a fact issue regarding whether West and Reid could not reasonably have discovered Reid's injury before Reid became mentally incompetent. West observed Reid's memory and speech problems as early as 1991. In the context of a fraudulent concealment case, a party is deemed to have knowledge of his or her "cause of action" upon gaining knowledge of facts, conditions, or circumstances which would cause a reasonably prudent person to make an inquiry that would lead to the discovery of a concealed cause of action. *See Borderlon v. Peck,* 661 S.W.2d 907, 909 (Tex.1983) (stating estoppel effect of fraudulent concealment ends when party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of concealed cause of action). Pollock opined "[t]here was probably a brief period of time after the syphilis became neurosyphilis that James Reid was not yet of unsound mind," although Pollack added that "[e]ven during that period of time James Reid was mentally incompetent to recognize or understand the symptoms he was experiencing from the neurosyphilis." Significantly, Pollack's opinion does not address West's awareness of Reid's symptoms.

■ Nevertheless, we need not decide whether the summary judgment proof raises a fact question as to whether Reid or West could reasonably have discovered the injury before January 1998, when Reid was diagnosed with neurosyphilis. Reid was allegedly injured when Moore failed to continue medical treatment for the syphilis until it was cured. West knew Reid was not cured in December 1997, but pursued additional tests in January 1998—a spinal tap—to determine the full extent of the damage suffered by Reid as a result of Moore's alleged breach. We conclude the two-year delay between actual discovery and filing of the lawsuit was unreasonable as a matter of law under the facts of this case.

At least two courts have held periods of two years or less between discovery of the injury and filing of the suit to be unreasonable as a matter of law. *See Fiore v. HCA Health Servs., Inc.,* 915 S.W.2d 233, 238 (Tex.App.-Fort Worth 1996, writ denied) (holding thirteen-month delay unreasonable as matter of law when no explanation offered for delay); *see also Work,* 809 S.W.2d at 354 (stating, regardless of whether plaintiff was required to file suit within four months prior to expiration of limitations period, she was not entitled to wait more than 21 months after discovering cause of action before filing suit). *But see Gagnier,* 17 S.W.3d at 745–46 (holding

fact question created whether ten month delay reasonable when seven months of delay was due to defendants' refusal to provide medical records and 90 days were spent recovering from surgery, consulting attorney, conducting investigation, and filing suit); *DeRuy v. Garza*, 995 S.W.2d 748, 753 (Tex.App.-San Antonio 1999, no pet.) (holding fact question created whether almost one year delay reasonable when plaintiff was recovering from surgery for three months, saw attorney six months later, and suit was filed three months thereafter).

Reid, however, contends he had *no reasonable opportunity to bring his lawsuit* because of his disease and his being of unsound mind. In short, he uses mental incapacity to support the reasonableness of the two-year, post-discovery, delay.

Reid relies on the following three cases in which courts have held article 4590i, section 10.01 or its predecessor unconstitutional as applied to a mentally incapacitated plaintiff: *Palla v. McDonald*, 877 S.W.2d 472 (Tex.App.-Houston [1st Dist.] 1994, no writ); *Felan*, 857 S.W.2d 113; and *Tinkle v. Henderson*, 730 S.W.2d 163 (Tex.App.-Tyler 1987, writ ref'd).[5] As explained by this court in *Jones*, the mental incapacities in all of these cases were both caused by the medical procedures in question and were totally disabling. *Jones*, 964 S.W.2d at 165. As this court also explained, in *Palla* and *Tinkle*, the incapacity was continuous and uninterrupted from the time of injury until the suit was filed. *See Jones*, 964 S.W.2d at 165 (citing *Tinkle*, 730 S.W.2d at 167; *Palla*, 877 S.W.2d at 474). *Felan* was a wrongful death case in which a patient was rendered unconscious during surgery and died without regaining consciousness. *See Jones*, 964 S.W.2d at 165 (citing *Felan*, 857 S.W.2d at 115–16).[6] In *Jones*, this court declined to apply *Palla*, *Felan*, and *Tinkle* when the mental disability was neither caused by the medical procedures nor totally disabling. *Jones*, 964 S.W.2d at 165–66. In the present case, although Reid's mental incapacity was allegedly caused by the alleged malpractice, Reid's mental incapacity was not continuous or totally disabling.

Reid also relies on the following two cases for the proposition that a parent's, guardian's, or next friend's failure to bring a lawsuit on behalf of a person of unsound mind does not effect the "tolling" of the statute of limitations: *Weiner v. Wasson*, 900 S.W.2d 316 (Tex.1995), and *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752 (Tex.1993). These cases, too, are distinguishable from the present case.

*Weiner* was a medical malpractice case, but the legal disability was minority, which terminates at age eighteen and, during which, a person cannot sue in his own behalf. *See Weiner*, 900 S.W.2d at 317, 319; *Sax v. Votteler*, 648 S.W.2d 661, 666–67 (Tex.1983). In *Weiner*, the court followed its earlier decision in *Sax* and re-

5. The statute under consideration in *Tinkle* was the predecessor to the present statute. *See Tinkle*, 730 S.W.2d at 167 (citing Act of June 3, 1975, ch. 330, § 1, 1975 Tex. Gen. Laws 864, 865–66 (formerly article 5.82, section 4 of the Insurance Code), repealed by Medical Liability and Insurance Improvement Act, ch. 817, pt. 4, 1977 Tex. Gen. Laws 2039, 2064).

6. Although the plaintiff in *Tinkle* argued his incapacity "tolled" the running of the limita-

tions period, the court did not use that term in its analysis. In *Felan*, however, the court, following *Tinkle*, concluded "the medical malpractice statute of limitations was tolled because the malpractice act rendered [the plaintiff] incompetent." *Felan*, 857 S.W.2d at 117–18. It is questionable whether the concept of "tolling" is consistent with the language of article 4590i, section 10.01 and the open courts analysis.

jected the defendant's argument that the ability of a child's parent to bring suit on behalf of the parent was a reasonable substitute for the child's own access to the courts. *Weiner*, 900 S.W.2d at 319–320 (following *Sax*, 648 S.W.2d at 667). The court held the plaintiff had "two years after attaining age eighteen to bring suit for the acts of medical malpractice allegedly committed during his minority." *Weiner*, 900 S.W.2d at 321.

*Ruiz* addressed the disability of mental incapacity under the tolling provisions in Texas Civil Practice and Remedies Code section 16.003—not the limitations provisions found in article 4590i. *See Ruiz*, 868 S.W.2d at 754. The court "conclude[d] that the mere commencement of a lawsuit by, or on behalf of, a legally incapacitated individual is, considered alone, insufficient to deny the protection of the tolling provision." *Id.* at 755. We acknowledge the following language in *Ruiz*:

We have compared the legal disabilities of minority status and mental incapacity:

It is impossible to avoid the analogy between the situation of the child plaintiff ... and the arguably incompetent plaintiff in this case. Traditionally the interests of minors, incompetents, and other helpless persons are viewed in law as substantially similar, and both the substantive law and the rules of procedure accord them comparable treatment. In many respects, mentally incompetent persons present a more compelling case for legal protection. They are frequently less communicative, more vulnerable and dependent than children.... The mentally incompetent are less likely than children to have someone intimately interested in their welfare and inclined to act in their behalf.

*Tinkle v. Henderson*, 730 S.W.2d 163, 166 (Tex.App.-Tyler 1987, writ ref'd).

Access to the courts does not alone provide a legally incapacitated person a viable opportunity to protect his legal rights. The disability of a person of unsound mind is not only the lack of access to the courts, but also the inability to participate in, control, or even understand the progression and disposition of their lawsuit.

*Id.*

The *Ruiz* court nevertheless recognized the possibility that, in a case such as that before it, the limitation period might remain open for the plaintiff's lifetime. *Id.* at 756. There are three reasons not to extend to the instant case the *Ruiz* concept of perpetual tolling of limitations in cases involving mentally incompetent plaintiffs. First, *Ruiz* was not a medical malpractice suit brought under article 4590i.

Second, Javier Ruiz was adjudged mentally incompetent from the date of the accident. *See Ruiz*, 868 S.W.2d at 753. Here, Reid was not totally disabled at the outset and, unlike Javier Ruiz, was never adjudged mentally incompetent. Rather, Reid's disability occurred gradually over a period of ten years following Moore's failure to continue treating Reid's syphilis.

 Third, one purpose of the Medical Liability and Insurance Improvement Act, is to avoid stale claims. *See Hyson v. Chilkewitz*, 971 S.W.2d 563, 571 (Tex.App.-Dallas 1998) (stating language of section 10.01, stated legislative findings, and purpose of the Act, clearly indicate legislative intent to limit strictly time for asserting health care liability claims to avoid stale claims and to reduce frequency of claims), *rev'd on other grounds*, 22 S.W.3d 825 (Tex.1999). Leaving a limitation period open potentially for a plaintiff's lifetime solely on the basis of mental incapacity

when a plaintiff has access to the courts and has demonstrated the ability to participate in preparing the lawsuit is inconsistent with the policy underlying the Medical Liability and Insurance Improvement Act and does not seem to us necessary under the open courts provision.[7]

We therefore decline to extend *Ruiz* to a claim subject to the Medical Liability and Insurance Improvement Act. Instead, we hold a period of two years between discovery of the full extent of an injury and filing of a medical malpractice lawsuit is unreasonable as a matter of law when over 16 years passed between commission of the alleged tort and filing of the lawsuit, the plaintiff was not initially rendered mentally incapacitated by the alleged tort and did not become mentally incapacitated for over ten years after the tort, the plaintiff appears by a next friend and individually, and the plaintiff has demonstrated some ability to participate in the lawsuit.

We overrule West and Reid's sole point of error.

We affirm the judgment of the trial court.

**7.** Moore directs this court's attention to the fact Reid swore in his affidavit he believed he was competent to make the affidavit and was able to recall events surrounding his initial diagnosis and treatment in 1983. Reid also responded to Moore's interrogatories in May, 2000, although he stated he had to answer some of the questions with the help of his mother and attorney, and his mother answered some of the questions.