**Opinion issued August 6, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00775-CV

———————————

**AVAGENE HARRIS, Appellant**

**V.**

**VICTOR KAREH, M.D. AND NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY, LTD. D/B/A NORTH CYPRESS MEDICAL CENTER, Appellees**

On Appeal from the 125th District Court
Harris County, Texas
Trial Court Case No. 2017-23927

**MEMORANDUM OPINION**

Appellant, Avagene Harris, challenges the trial court's dismissal of her health care liability claims[1] against Victor Kareh, M.D. and North Cypress Medical Center Operating Company, Ltd., doing business as North Cypress Medical Center ("North Cypress Medical").[2] In four issues, Harris contends that the trial court erred in dismissing her claims against Dr. Kareh and North Cypress Medical and in denying her motion for new trial.

We affirm.

## Background

This is the second appeal we have heard involving appellant.[3] Previously, in 2015, appellant brought health care liability claims against certain health care providers arising from injuries she sustained in an August 2009 car accident.[4] In that case, the trial court granted summary judgment in favor of two doctors on limitations grounds, which appellant did not appeal.[5] The trial court also granted the

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13).

[2] Harris sued "North Cypress Hospital." In its answer, North Cypress Medical identified itself as "North Cypress Medical Center Operating Company, Ltd., d/b/a as North Cypress Medical Center," as did the trial court in its order dismissing Harris's health care liability claim against North Cypress Medical. Our style of the case is in accord with the trial court's order. *See Owens v. Handyside*, 478 S.W.3d 172, 175 n.1 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

[3] *See Harris v. Hous. Methodist Hosp.*, No. 01-17-00544-CV, 2018 WL 3233329 (Tex. App.—Houston [1st Dist.] July 3, 2018, pet. denied) (mem. op.).

[4] *See id.* at *1.

[5] *See id.* at *1–2.

motion to dismiss filed by a hospital based on appellant's failure to serve a sufficient expert report.[6] Prior to appealing the trial court's granting of the hospital's motion to dismiss, appellant initiated the current case, asserting health care liability claims against different health care providers related to the same injuries she sustained in the August 2009 car accident.

In her petition filed in this case, Harris alleged that on August 21, 2009, she was injured in a car accident. Harris was taken to Houston Methodist Willowbrook Hospital where a computerized tomography ("CT") scan was performed. Although Harris was first told that the results of her CT scan were negative, later that day, she was informed that she had a "small amount of blood on the right parietal brain." Harris later was transported to Houston Methodist Downtown ("Methodist Downtown") so that she could have surgery.

Upon arriving at Methodist Downtown, a doctor diagnosed Harris with a cerebral contusion, but did not recommend surgery or refer Harris to a specialist. Harris was then discharged. Some time later, Harris saw the same doctor at an "outpatient visit," and he performed an electroencephalogram ("EEG") and magnetic resonance imaging ("MRI") that "revealed . . . blood on [the] brain." The doctor still did not recommend surgery or refer Harris to a specialist.

---

[6] *See id.* at *1–4.

On or about September 3, 2009, Harris was examined by another doctor, who did not "know what that was on her brain" and did not refer her to a specialist for surgery.

On September 26, 2010, Harris suffered a stroke; "she had numbness in half of her body and could not talk." Harris was taken to North Cypress Medical where Dr. Kareh and another doctor treated her. The doctors performed an MRI, which revealed blood on Harris's brain. Dr. Kareh and the other North Cypress Medical doctor[7] diagnosed Harris with a cavernous angioma,[8] and Dr. Kareh planned to perform "radiosurgery or neurosurgery." Harris was "placed on medication[s] that [produced] severe side effects," and she remained at the hospital for two weeks. Later, she was discharged, but instructed to keep taking the medications prescribed by the other North Cypress Medical doctor.

---

[7]    We express no opinion on whether this other doctor was an employee of North Cypress Medical. He is only referred to as the "other North Cypress Medical doctor" for clarity purposes.

[8]    Harris alleges that a cavernous angioma:

> is a type of blood vessel malformation or hemangioma, where a collection of dilated blood vessels form[s] a tumor. Because of th[e] malformation, [the] blood flow through the cavities, or caverns, is slow. Additionally, the cells that form the vessels do not form the necessary junctions with surrounding cells and the structural support from the smooth muscle is hindered causing leakage into the surrounding tissues. It is the leakage of blood, known as a hemorrhage from these vessels[] that causes a variety of symptoms known to be associated with th[e] vascular abnormality.

Because Harris could no longer take care of herself, she stayed with her parents. The medications that she had been prescribed caused Harris to become sick and "almost die[]." According to Harris, she developed red spots all over her body, severe weakness which made it impossible for her to walk, depression, anxiety, weight loss, loss of hair, and mental disorders. She also fell and tore ligaments in her knee. During this time, Harris went "back and forth" to North Cypress Medical, but she did not have "radiosurgery or open surgery."[9]

On November 2, 2010, Harris returned to North Cypress Medical with severe chest pains, and testing revealed that she had an enlarged heart because of the medications she had been taking. But the other North Cypress Medical doctor who had prescribed Harris the medications "refused to take her off [of] them," and Harris's condition continued to deteriorate.

On January 24, 2011, Harris saw Dr. Kareh, but he did not recommend surgery or refer her to a specialist. Instead, Dr. Kareh told Harris to continue participating in physical therapy and to schedule another appointment with him in six weeks. According to Harris, she then got worse. She was "really psychotic" and saw several neuropsychologists who diagnosed her with schizophrenia and bipolar disorder.

---

[9]     Harris alleges that "Dr. Behar" was to perform "radiosurgery or open surgery" eight weeks after her admission to North Cypress Medical on September 26, 2010. It is unclear from the record who "Dr. Behar" is.

On May 18, 2011, another doctor performed surgery on Harris to remove her cavernous angioma. But despite having surgery, Harris continued to "suffer brain damage[] and other debilitating physical maladies directly related to the cavernous angioma and its adverse effect[s] on [her] brain which existed from August 21[,] 2009 until its removal [on] May 18[,] 2011." The doctor who performed Harris's surgery referred her to other neuropsychologists, who diagnosed her with a "[s]evere mental disorder." According to Harris, she cannot function without her prescribed psychotic medications.

On October 6, 2015, Harris had right knee surgery to correct her torn meniscus which had occurred after she tore ligaments in her left knee in 2010. Harris alleged that she still needs surgery on her left knee but doctors have told her "to try not to have another surgery because she might not wake up because the left side of her brain is going slow." Harris has also been diagnosed with "a left bundle block in her heart," and she suffered a second stroke in November 2016.

Harris further alleged that because the cavernous angioma was not surgically removed until May 18, 2011, she suffered brain damage and adverse effects. Although a cavernous angioma "[c]an bleed and the blood can dissolve," in her case, the cavernous angioma bled again. And doctors should have seen the additional bleeding and treated it immediately or referred her to a specialist. Because Harris did not receive surgery immediately and the treatments provided by doctors were

completely unnecessary and dangerous, Harris suffered irreparable harm, underwent expensive, unnecessary, and harmful treatment, and was permanently damaged.

Harris brought health care liability claims against Dr. Kareh for negligence, and North Cypress Medical, based on a theory of vicarious liability, alleging that Dr. Kareh, who Harris alleged was an employee of North Cypress Medical, had:

- failed to choose an appropriate procedure to treat Harris's condition;

- failed to "not consent [to] another specialist or refer [Harris to] one";

- failed to properly diagnose Harris's condition;

- failed to treat Harris's condition; and

- failed to obtain Harris's consent for treatment after informing her of the risks associated with that treatment.

And as a result of those acts or omissions by Dr. Kareh, Harris was injured.

Dr. Kareh and North Cypress Medical both answered, generally denying Harris's allegations and asserting various defenses, including the affirmative defense of statute of limitations. The trial court then signed an Order of Referral for Mediation.

On November 2, 2017, Harris filed and served on Dr. Kareh and North Cypress Medical a medical expert report dated September 6, 2017 and authored by Beatrice C. Engstrand, M.D., F.A.A.N., F.A.C.G.S. (the "September 6 report").

On November 22, 2017, North Cypress Medical objected to the September 6 report, asserting that the report was "entirely silent on the subject of standard of care, breach, and causation as it relates to the conduct of North Cypress Medical . . . and/or its employees and representatives." For instance, the report did not "identify any particular nurse (or any other [North Cypress Medical] employee) whose conduct [was] called into question," "[i]dentify or describe any specific shift or period of time during [Harris's] admission when the conduct of any [North Cypress Medical] employee or representative allegedly provided negligent care," "[i]dentify [the] applicable standards of care for [North Cypress Medical] employees/representatives," "[i]dentify any conduct (action or inaction) [that Harris] believe[d] constitute[d] negligence," or "[i]dentify how any negligence, about which the report [was] silent, proximately caused any injury to" Harris. North Cypress Medical requested that the trial court dismiss with prejudice Harris's health care liability claim against it.

In response to North Cypress Medical's objection, Harris asserted that, although North Cypress Medical argued that the September 6 report was "silent on the subject of . . . standard of care, breach[,] and causation . . . relate[d] to the conduct of" North Cypress Medical and its employees and representatives, she "specifically named North Cypress [Medical] in her original petition" and the hospital was vicariously liable for the negligence of Dr. Kareh because Harris

believed that Dr. Kareh was either employed by North Cypress Medical or the hospital "exerted sufficient control over [his] work." Thus, Harris requested that North Cypress Medical's objection be overruled and its motion to dismiss be denied.

After a hearing, the trial court sustained North Cypress Medical's objection to the September 6 report and dismissed with prejudice Harris's health care liability claim against it.[10]

Later, Dr. Kareh moved for summary judgment on Harris's health care liability claim against him, arguing that he was entitled to judgment as a matter of law because her claim was barred by the applicable statute of limitations.[11] Dr. Kareh asserted that Harris's claim against him was governed by a two-year statute of limitations and the limitations period began to run on the date the alleged breach occurred, if that date was ascertainable, or on the date on which the medical or health care that was the subject of the claim was completed. Here, Dr. Kareh last saw or treated Harris on January 24, 2011, and Harris did not file suit against Dr. Kareh until April 7, 2017. Dr. Kareh attached many exhibits to his summary-judgment motion, including his declaration in which he stated: "The first time I saw [Harris]

---

[10] Dr. Kareh also filed an objection to the September 6 report, on which the trial court never ruled.

[11] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a).

was [on] September 28, 2010 as a neurosurgery consult. The last time I provided any care or treatment to . . . Harris was on January 24, 2011."

In response to the summary-judgment motion, Harris argued that the two-year statute of limitations did not bar her health care liability claim against Dr. Kareh, even though she had filed her suit "beyond the expiration of the limitations period," because she was "continuously incapacitated, for purposes of her claim against Dr. Kareh, from 2011 to the present, and certainly during the time-period from 2011 until the time suit was filed[] on April 7, 2017." And when a plaintiff continuously remains in an incapacitated state, either physically or mentally, applying the statute of limitations to bar her claim violates the open courts provision of the Texas Constitution.[12] Harris attached exhibits to her response.

In reply to Harris's response, Dr. Kareh objected to the summary-judgment evidence that Harris attached to her response and asserted that health care liability claims are subject to a two-year statute of limitations, the statute of limitations applied to "all persons regardless of minority or other legal disability," and the statute of limitations was not tolled "due to unsound mind or mental incompetence." (Emphasis omitted.) And Harris presented no evidence to controvert Dr. Kareh's declaration that he last saw or treated her on January 24, 2011, almost six years before she filed suit.

---

[12]    *See* TEX. CONST. art. I § 13.

The trial court granted Dr. Kareh summary judgment and dismissed Harris's health care liability claim against him based on the statute of limitations.

Harris then moved for a new trial, arguing that the trial court "should grant a new trial in order to prevent or correct injustice" because she now had an authenticated copy of the Social Security Administration documents that she had attached to her response to Dr. Kareh's summary-judgment motion and the trial court should not have "relied on" Dr. Kareh's objections to her summary-judgment evidence because her evidence constituted competent summary-judgment evidence. Harris also reasserted her argument that the two-year statute of limitations did not bar her health care liability claim against Dr. Kareh.

The trial court denied Harris's motion.

## Summary Judgment

In her third issue, Harris argues that the trial court erred in granting Dr. Kareh summary judgment on limitations grounds because Harris's "last date of hospitalization was November 2016," the open courts exception to the statute of limitations applied to Harris, Texas Civil Practice and Remedies Code section 74.251(a) was unconstitutional as applied to Harris, the statute of repose excepted Harris from the applicable statute of limitations, and the trial court erroneously excluded Harris's summary-judgment evidence.

We review a trial court's summary-judgment decision de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a summary-judgment motion, a movant has the burden of proving that he is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a defendant moves for summary judgment on an affirmative defense, he must plead and conclusively establish each essential element of his defense and defeat the plaintiff's cause of action. *Cathey*, 900 S.W.2d at 341; *Yazdchi v. Bank One, Tex., N.A.*, 177 S.W.3d 399, 404 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). Once the movant meets his burden, the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Transcon. Ins. Co. v. Briggs Equip. Trust*, 321 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The evidence raises a genuine issue of fact if reasonable and fair-minded fact finders could differ in their conclusions because of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable inference

must be indulged in favor of the non-movant and any doubts must be resolved in her favor. *Id.* at 549.

It is an affirmative defense that a statute of limitations bars a claim. TEX. R. CIV. P. 94. Thus, Dr. Kareh bore the burden of establishing as a matter of law that Harris's health care liability claim against him was time-barred. *See KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). That said, if Dr. Kareh established that the statute of limitations barred Harris's claim, Harris was then required to adduce summary-judgment proof raising a fact issue in avoidance of the statute of limitations. *Id.*; *see also Walters v. Cleveland Reg'l Med. Ctr.*, 307 S.W.3d 292, 295 (Tex. 2010) ("In the summary judgment context, the burden is on the plaintiff asserting an [o]pen [c]ourts exception to the statute of limitations to raise a fact issue demonstrating that she did not have a reasonable opportunity to discover the alleged wrong and bring suit before the limitations period expired.").

## A. Statute of Limitations

Health care liability claims are subject to a two-year statute of limitations period, beginning from either (1) the occurrence of the breach or tort, (2) the last date of the relevant course of treatment, or (3) the last date of the relevant hospitalization. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a); *Mitchell v. Methodist Hosp.*, 376 S.W.3d 833, 835 (Tex. App.—Houston [1st Dist.] 2012, pet.

denied).  The two-year statute of limitations is absolute, and the "discovery rule" does not apply to health care liability claims.  *Walters*, 307 S.W.3d at 298 n.28; *Thomas v. Jayakumar*, No. 01-14-00984-CV, 2016 WL 640629, at *3 (Tex. App.— Houston [1st Dist.] Feb. 11, 2016, no pet.) (mem. op.).  If the date the alleged breach or tort occurred is ascertainable, limitations must begin on that date, and further inquiry into the second and third categories of dates is unnecessary.  *Shah v. Moss*, 67 S.W.3d 836, 841 (Tex. 2001); *Husain v. Khatib*, 964 S.W.2d 918, 919 (Tex. 1998); *Weathers v. Lopez*, No. 01-11-00827-CV, 2013 WL 123679, at *2 (Tex. App.—Houston [1st.Dist.] Jan. 10, 2013, pet. denied) (mem. op.).  A plaintiff cannot choose the date most favorable to her case.  *Shah*, 67 S.W.3d at 841; *Weathers*, 2013 WL 123679, at *2.

In her petition, Harris alleged that on August 21, 2009, she was injured in a car accident.  Later, on September 26, 2010, she suffered a stroke and was taken to North Cypress Medical where Dr. Kareh and another doctor treated her.  The doctors performed an MRI, which revealed blood on Harris's brain.  Dr. Kareh and the other North Cypress Medical doctor diagnosed Harris with a cavernous angioma, and Dr. Kareh planned to perform "radiosurgery or neurosurgery."  Harris was then "placed on medication[] that [produced] her severe side effects," and she remained at the hospital for two weeks.  Later, she was discharged and instructed to keep taking the medications prescribed by the other North Cypress Medical doctor.  On January 24,

2011, Harris saw Dr. Kareh, but he did not recommend surgery or refer her to a specialist. Instead, Dr. Kareh told Harris to continue participating in physical therapy and to schedule another appointment with him in six weeks. According to Harris, she then got worse. Thus, Harris alleged that Dr. Kareh negligently failed to choose an appropriate procedure to treat Harris's condition, failed to refer Harris to a specialist, failed to properly diagnose Harris's condition, failed to treat Harris's condition, and failed to obtain Harris's consent for treatment after informing her of the risks associated with that treatment.

Dr. Kareh, in his declaration, which he attached to his summary-judgment motion, stated that he first saw Harris on September 28, 2010 for a neurosurgery consult and the last time that he provided her with "any care or treatment" was on January 24, 2011.

Here, the date the alleged breach or tort occurred is ascertainable. *See Shah*, 67 S.W.3d at 841; *Husain*, 964 S.W.2d at 919. Dr. Kareh's alleged negligence in failing to properly diagnose, treat, advise, and inform Harris about her condition and treatment could have *only* occurred on the days that Dr. Kareh saw or examined Harris, with the last time being on January 24, 2011. *See Shah*, 67 S.W.3d at 844–45 (health care provider's failure to provide follow-up treatment could have occurred only on check-up visits when provider had opportunity to order follow-up treatment and did not); *Husain*, 964 S.W.2d at 919–20 (health care provider's failure to take

action to diagnose and treat cancer could have occurred only during office visits with patient); *Bala v. Maxwell*, 909 S.W.2d 889, 892 (Tex. 1995) (health care provider could have only breached duty to perform tests on patient on dates when he examined patient); *Rowntree v. Hunsucker*, 833 S.W.2d 103, 108 (Tex. 1992) (health care provider could have only failed to properly diagnose patient on those occasions when he had chance to conduct examinations); *Estate of Klovenski v. Kapoor*, No. 14-13-00850-CV, 2015 WL 732651, at *5 (Tex. App.—Houston [14th Dist.] Feb. 19, 2015, no pet.) (mem. op.) (concluding dates of health care provider's breaches ascertainable because alleged negligence for failure to diagnose, treat, and advise patient about her condition could have only occurred on dates where provider examined patient). Harris has not disputed that January 24, 2011 is the last time that she saw or was examined by Dr. Kareh; and, in fact, portions of the evidence that she attached to her summary-judgment response also reflect that Dr. Kareh only saw Harris on September 28, 2010 and January 24, 2011. *See Boyd v. Kallam*, 152 S.W.3d 670, 676 (Tex. App.—Fort Worth 2004), *pet. denied, improvidently granted*, 232 S.W.3d 774 (Tex. 2007) ("If a movant does establish that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations.").

Because the January 24, 2011 date is ascertainable, the statute of limitations period for Harris's health care liability claim began to run on that date. *See Shah*,

67 S.W.3d at 841; *Husain*, 964 S.W.2d at 919; *see also Weathers*, 2013 WL 123679, at *2 ("If the date the health care provider's alleged negligence took place can be ascertained, then there are no doubts to resolve, and we must measure limitations from that date."). Thus, Harris had to file suit against Dr. Kareh by January 24, 2013. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a). Instead, Harris filed suit against Dr. Kareh on April 7, 2017, more than four years after the statute of limitations period had expired.[13]

Harris argues for the first time on appeal[14] that the statute of limitations period should run from her November 2016 hospitalization following her second stroke because the second stroke was caused by Dr. Kareh's decision not to surgically remove the cavernous angioma. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a); *Mitchell*, 376 S.W.3d at 835 (health care liability claims subject to two-year statute of limitations period, beginning from either (1) occurrence of breach or tort, (2) last date of relevant course of treatment, or (3) *last date of relevant hospitalization*). But because the date on which the alleged breach or tort occurred is ascertainable in this case, we need not consider the last date of any purportedly

---

[13]     Harris has not asserted that the statute of limitations was tolled at any point by Texas Civil Practice and Remedies Code section 74.051. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.051(c); *Durham v. Children's Med. Ctr. of Dall.*, 488 S.W.3d 485, 490 (Tex. App.—Dallas 2016, pet. denied) ("[A]ccording to [section] 74.051(c), the [section] 74.251(a) limitations period is tolled for 75 days if the claimant gives notice of his or her claim as Chapter 74 requires.").

[14]     *See* TEX. R. APP. P. 33.1(a).

relevant hospitalization. *See Shah*, 67 S.W.3d at 841; *Husain*, 964 S.W.2d at 919; *Weathers*, 2013 WL 123679, at \*2. As noted, a plaintiff cannot choose the date that is the most favorable to her case. *Shah*, 67 S.W.3d at 841; *Weathers*, 2013 WL 123679, at \*2.

## B. Open Courts Provision

Harris argues that open courts exception applies here to prevent the two-year statute of limitations from barring her claim against Dr. Kareh because she "only learned that . . . Dr. Kareh had treated her upon obtaining medical records in 2017."

The Texas Constitution guarantees that persons bringing common-law claims will not unreasonably or arbitrarily be denied access to the courts. TEX. CONST. art. I § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."); *see also Thomas*, 2016 WL 640629, at \*3. The open courts provision, however, does not toll limitations. *See Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 703 (Tex. 2014). Rather, unlike a tolling provision, which defers the accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to her claim, the open courts provision merely gives a litigant a reasonable time to discover her injuries and file suit. *Rivera*, 445 S.W.3d at 703, *Walters*, 307 S.W.3d at 295.

To pursue an open courts challenge in a health care liability case, the plaintiff must present a common-law claim that is restricted by the statute and show that the restriction is unreasonable or arbitrary when balanced against the statute's purpose and basis. *See Yancy v. United Surgical Partners Int'l, Inc.*, 236 SW.3d 778, 783 (Tex. 2007); *Jennings v. Burgess*, 917 S.W.2d 790, 793 (Tex. 1996); *O'Reilly v. Wiseman*, 107 S.W.3d 699, 707 (Tex. App.—Austin 2003, pet. denied). The central question is whether it was impossible or exceedingly difficult for the plaintiff to discover the alleged wrong and sue within the two-year statute of limitations period. *See Shah*, 67 S.W.3d at 846–47; *O'Reilly*, 107 S.W.3d at 702. It is the plaintiff's burden to show that the nature of her claim made it impossible or exceedingly difficult to discover the alleged wrong and bring suit within the two-year period. *See Walters*, 307 S.W.3d at 296–97; *Gale v. Lucio*, 445 S.W.3d 849, 855 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). There can be no violation of the open courts provision if the plaintiff had a reasonable chance to discover the alleged wrong and bring suit before the limitations period expired. *Shah*, 67 S.W.3d at 841–42, 846–47; *Thomas*, 2016 WL 640629, at *3; *O'Reilly*, 107 S.W.3d at 707; *see also Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983) (holding knowledge of "facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry . . . is in law equivalent to knowledge of the cause of action"). Still yet, even if a plaintiff establishes the above, she must show that she used due

diligence and sued within a reasonable time after learning about the alleged wrong. *See Shah*, 67 S.W.3d at 847; *O'Reilly*, 107 S.W.3d at 707–08. Courts must determine what constitutes a reasonable time for a plaintiff to discover the alleged wrong and file suit. *See Yancy*, 236 SW.3d at 784.

In her summary-judgment response, Harris asserted that she was "continuously incapacitated, for purposes of her claim against Dr. Kareh, from 2011 to the present, and certainly during the time-period from 2011 until the time suit was filed[] on April 7, 2017." And that she personally had no memory of Dr. Kareh consulting with her. Thus, she asserted that the open courts provision of the Texas Constitution should preclude applying the two-year statute of limitations to her claim against Dr. Kareh. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a).

To support her claim of incapacitation, Harris stated that the Social Security Administration had declared her disabled, she had received "mental health services treatment at the Kinghaven Counseling Group," and her family had evidence of her "continuing incapacity." Harris attached to her summary-judgment response documents from the Social Security Administration finding that Harris had been disabled since August 24, 2009 for the purpose of supplemental security income payments; records from Kinghaven Counseling Group, where Harris had been actively participating in counseling for several years before filing suit against Dr.

Kareh; a report prepared by Dr. Engstrand dated April 12, 2017; and a declaration by her adult daughter.[15]

First, we note that while there may be evidence of a diminished capacity[16] in the record, Harris has not offered specific evidence of a lack of mental capacity to pursue litigation, participate in litigation, or control or understand the litigation process for any discernible period. *See Yancy*, 236 S.W.3d at 782–83 (plaintiff had burden to present evidence of continuous mental incapacity; in *Yancy*, patient, with guardian, in comatose condition considered incapacitated); *see also Huston v. United Parcel Serv., Inc.*, 434 S.W.3d 630, 636 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (appellant bears burden to bring forward on appeal sufficient record to show error committed by trial court). Nor is there evidence in the record that Harris has a guardian or that appellant has been adjudicated incapacitated. *See Yancy*, 236

---

[15] Although Dr. Kareh objected to the summary-judgment evidence that Harris attached to her response, the record does not indicate that the trial court ever ruled on Dr. Kareh's objections. *See Marshall v. Sackett*, 907 S.W.2d 925, 931 n.6 (Tex. App.—Houston [1st Dist.] 1995, no writ) (considering on appeal exhibits attached to summary-judgment motion because party did not obtain ruling from trial court on objection to exhibits); *see also Pegasus Transp. Grp., Inc. v. CSX Transp., Inc.*, No. 05-12-00465-CV, 2013 WL 4130899, at *2 n.2 (Tex. App.—Dallas Aug. 14, 2013, no pet.) (mem. op.). Indeed, a trial court can grant summary judgment, without considering objections, if it finds that the evidence did not generate a genuine issue of material fact. *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018). Here, we need not address the propriety of Dr. Kareh's objections because the trial court did not need to sustain the objections in order to grant summary judgment in favor of Dr. Kareh. *See id.*; *see also infra*.

[16] In her appellant's brief in this Court, Harris describes herself as having a "diminished" capacity rather than a complete lack of capacity.

S.W.3d at 780, 782–83; *see generally* TEX. EST. CODE ANN. §§ 1002.012 (defining "[g]uardian" (internal quotations omitted)), 1002.015 (defining "guardianship proceeding" (internal quotations omitted)), 1002.017 (defining "[i]ncapacitated person" (internal quotations omitted)), 1101.001–1106.006 (creation of guardianship).

Instead, the record reflects that Harris had previously filed suit against different health care providers stemming from the injuries that she received in the August 2009 car accident.[17]   *See Harris v. Hous. Methodist Hosp.*, No. 01-17-00544-CV, 2018 WL 3233329, at *1 (Tex. App.—Houston [1st Dist.] July 3, 2018, pet. denied) (mem. op.).  In that suit, Harris sued the other North Cypress Medical doctor who had diagnosed Harris, along with Dr. Kareh, with cavernous angioma, alleging that the other doctor failed to choose an appropriate procedure to treat Harris's condition, failed to consult a specialist, failed to properly diagnose Harris's condition, failed to treat Harris's condition, and failed to obtain Harris's consent for treatment after informing her of the risks associated with that treatment. *See id.* at *1–2.  In her petition in that suit, Harris alleged that she had learned, after her surgery in 2011, that she would still suffer irreparable harm because of the

---

[17]   An appellate court may take judicial notice of its own records in the same or related proceedings involving the same or nearly the same parties. *See Douglas v. Am. Title Co.*, 196 S.W.3d 876, 878 n.1 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  We take judicial notice of the records filed in *Harris*.

cavernous angioma because "the treatment she [had] endured [prior to surgery] had been completely unnecessary and dangerous." In response to the other North Cypress Medical doctor's motion for summary judgment based on limitations, Harris did not assert that she was incapacitated in any way that would preclude the two-year statute of limitations from applying to her health care liability claim. *See id.* at *1–3 (noting summary-judgment granted in favor of other North Cypress Medical doctor on limitations grounds). And after that suit, Harris began this suit pro se in April 2017, without even the aid of an attorney. Thus, we conclude that Harris has failed to raise a genuine issue of material fact related to her incapacity. And Harris has not met her burden to show that the nature of her claim made it impossible or exceedingly difficult for her to discover the alleged wrong and bring suit within the two-year statute of limitations period. *See Walters*, 307 S.W.3d at 296–97; *Gale*, 445 S.W.3d at 855; *cf. Tinkle v. Henderson*, 730 S.W.2d 163, 164–67 (Tex. App.—Tyler 1987, writ ref'd) (disputed fact issues existed over whether plaintiff was mentally incapacitated, thus summary judgment improper based on limitation provision in Texas Insurance Code).

Still, even were we to presume that Harris had established a lack of capacity, our open-courts analysis does not end because an individual acting on behalf of a legally incompetent person, such as a next friend,[18] a guardian, or an attorney, must

---

[18] *See* TEX. R. CIV. P. 44.

show that there was not a reasonable chance to discover the alleged wrong within the limitations period and that the individual used due diligence to sue within a reasonable time; otherwise, the incapacitated person's open courts challenge is barred. *See Rivera*, 445 S.W.3d at 704–06.

The summary-judgment evidence reveals that on August 21, 2009, Harris was injured in a car accident. On September 26, 2010, Harris suffered a stroke and was taken to North Cypress Medical where Dr. Kareh and another doctor treated her. Dr. Kareh first examined Harris on September 28, 2010. Testing performed at North Cypress Medical revealed a hematoma on the brain, and Harris stayed in the hospital for two weeks. Harris was diagnosed with a cavernous angioma, and Dr. Kareh planned to do either "radiosurgery or open surgery." Harris was placed on medication by the other North Cypress Medical doctor and was told that surgery would be performed in eight weeks. But after eight weeks, surgery was not performed. Harris continued to go back and forth to North Cypress Medical because of problems with her medication and its adverse effects.

In November 2010, Harris returned to North Cypress Medical with chest pain, and a chest examination revealed an enlarged heart with some "mild pulmonary vascular congestion." Harris was discharged from the hospital "with the same plan to do radiosurgery and to continue on the medic[ations]" that she had been prescribed. Harris's condition continued to deteriorate. On December 28, 2010, a

magnetic resonance angiogram was performed and revealed "major segments [were] present."  On January 24, 2011, Harris saw Dr. Kareh, who recommended that she keep participating in physical therapy and return in six weeks.  Surgery was not performed by Dr. Kareh.  This was the last time that Harris saw Dr. Kareh.

Later, "[a]round the end of January 2011, [Harris's] family got a call late one night from a Dr. Weir," who stated that "what they were doing at North Cypress [Medical] was wrong."  Weir told the family that "they need[ed] to take . . . Harris off [her] med[ications]" and he referred Harris to Dr. Peter Shedden, a neurosurgeon.  Dr. Weir stated that "the right treatment [for Harris's condition] was surgery and she should have had it long ago."  Harris's family took Harris off her medications and many of the adverse effects went away.

In March 2011, Harris saw Dr. Shedden, who performed an MRI.  Dr. Shedden "saw blood" and informed Harris that "surgery was the only option."  On May 18, 2011, Harris "underwent a craniotomy for excision of cavernous angioma."  Even so, right after surgery, Dr. Shedden "s[aw] some mental disorder," and Harris was "still having psychotic episodes right after surgery."  Thus, following surgery, Harris saw additional doctors who diagnosed her with "mental disorders" and psychosis.  She began attending a counseling group in 2012, where she saw a psychiatrist and a counselor to treat her mental disorders.  Records from the Kinghaven Counseling Group include Harris's "mental status examination"

completed in June 2012. In December 2012, Harris was "approved for mental illness . . . by [a] disability judge."

Here, despite being informed, in early 2011, that the treatment—the non-surgical treatment and medications that Harris had been receiving from September 2010 to January 2011—was "wrong," that Harris needed to be taken off her medications, that surgery was the "right treatment" for Harris's condition, and that Harris "should have had it long ago," and despite having surgery on May 18, 2011 to treat her cavernous angioma—all of which occurred more than a year and a half before the statute of limitations period ran on Harris's health care liability claim against Dr. Kareh—Harris did not sue Dr. Kareh until April 7, 2017, almost six years after her surgery. Also, the allegedly negligent acts committed by Dr. Kareh—the failure to choose an appropriate procedure to treat Harris's condition, the failure to refer Harris to a specialist, the failure to properly diagnose Harris's condition, the failure to treat Harris's condition, and the failure to properly inform Harris of the risks associated with the treatment provided by Dr. Kareh—occurred between September 2010 and January 2011 and were thus known to Harris and her family in 2011. Moreover, the ultimate realization that the surgery performed by Dr. Shedden did not resolve the adverse effects of Harris's brain injury occurred in 2011 as well, right after Dr. Shedden performed surgery. And the statute of limitations for Harris's

health care liability claim against Dr. Kareh did not run until January 24, 2013—over a year and a half later.

As noted above, there can be no open courts violation if a plaintiff had a reasonable chance to discover the alleged wrong and bring suit before the limitations period expired. *See Shah*, 67 S.W.3d at 841–42, 846–47; *Thomas*, 2016 WL 640629, at *3; *O'Reilly*, 107 S.W.3d at 707. And Harris has cited no authority, nor have we found any, to support a conclusion that when a party discovers or has a reasonable chance to discover the alleged wrongful act within the limitations period, that party may bring a health care liability claim outside the limitations period by relying on the open courts provision of the Texas Constitution. *See Santos v. Holzman*, No. 13-13-00273-CV, 2015 WL 3485418, at *5 (Tex. App.—Corpus Christi–Edinburg May 28, 2015, pet. denied) (mem. op.); *cf. Ericson v. Roberts*, 910 S.W.2d 608, 613 (Tex. App.—Tyler 1995, no writ) ("To have a valid argument that [section 74.251] was unconstitutional, the [plaintiffs] would have had to allege that they were not able to discover [the] injuries within two years from the date of the operation. Thus, the [plaintiffs'] challenge to the constitutionality of the statute is without merit.").

Although Harris asserts that the "record evidence [shows] that Harris immediately filed suit against . . . Dr. Kareh when she discovered medical records evidencing her visits [with him]," this assertion does not focus on when Harris or

her family learned of the alleged wrong.[19]  *See Shah*, 67 S.W.3d at 841–42, 846–47; *Thomas*, 2016 WL 640629, at \*3; *O'Reilly*, 107 S.W.3d at 707.  Harris's own summary-judgment evidence reveals that "[a]round the end of January 2011, [Harris's] family got a call late one night from a Dr. Weir," who stated that "what they were doing at North Cypress [Medical] was wrong."  Dr. Weir also told the family that "they need[ed] to take . . . Harris off [her] med[ications]," and he referred Harris to Dr. Shedden, a neurosurgeon.  Dr. Weir stated that "the right treatment [for Harris's condition] was surgery and she should have had it long ago."  Harris's family then took Harris off her medications and many of the adverse effects went away.  Later, in March 2011, Harris was informed by Dr. Shedden that "surgery was the only option."  On May 18, 2011, Harris "underwent a craniotomy for excision of cavernous angioma."  Thus, contrary to Harris's assertion, the evidence shows that in 2011, Harris and her family discovered or had a reasonable chance to discover the alleged wrongful acts committed by Dr. Kareh and could have filed suit within the limitations period.  *See Borderlon*, 661 S.W.2d at 909 (holding knowledge of "facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry . . . is in law equivalent to knowledge of the cause of action").

---

[19]    We note that the declaration from Harris's adult daughter does not state when she "became aware that [Harris] saw Dr. . . . Kareh," it only states that she learned that Harris "had seen Dr. . . . Kareh at North Cypress [Medical] when hospital records . . . were obtained."

Additionally, as explained, a plaintiff may not obtain relief under the open courts provision if she (or an individual acting on her behalf) did not use due diligence and sue within a reasonable time after learning about the alleged wrong. *Shah*, 67 S.W.3d at 847. Here, Harris waited to bring suit until around six years after she and her family learned about the purported negligence by Dr. Kareh. Delays of four months, seventeen months, and twenty-two months have been held to constitute a lack of due diligence, as a matter of law, so that an open courts challenge must fail on summary judgment. *See Rivera*, 445 S.W.3d at 704–06 (no due diligence when plaintiff waited over six and half years to file suit); *Turner v. Christus St. Michael Health Sys.*, No. 06-15-00068-CV, 2016 WL 1719261, at *4 (Tex. App.—Texarkana Apr. 28, 2016, no pet.) (mem. op.) (delay of five months after discovering of problem with treatment by hospital precluded open courts challenge as matter of law); *see also Yancy*, 236 SW.3d at 784 (courts must determine what constitutes reasonable time for plaintiff to discover alleged wrong and file suit).

Because Harris has failed to show that she did not have a reasonable chance to discover the alleged wrong and sue before the limitations period expired or that she used due diligence and sued within a reasonable time after learning about the alleged wrong, we hold that the Harris's open courts challenge necessarily fails.

## C.  Constitutionality of Statute of Limitations

Harris further argues that Texas Civil Practice and Remedies Code section 74.251(a) is unconstitutional as applied to her because she is an "incompetent plaintiff." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a) (health care liability claims subject to two-year statute of limitations).

To preserve a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion and the trial court either ruled on the party's request, objection, or motion, or refused to rule, and the party objected to that refusal. TEX. R. APP. P. 33.1(a).  If a party fails to do this, error is not preserved and the complaint is waived. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991); *see also Humble Surgical Hosp., LLC v. Davis*, 542 S.W.3d 12, 21 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("Rule 33.1 requires the appealing party to adequately raise issues before the trial court to give the trial court notice of [the party's] complaint.").  This is the case even for constitutional challenges. *See Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993); *Taylor v. Corr. Med. Servs., Inc.*, No. 01-11-00836-CV, 2013 WL 2246052, at *3 (Tex. App.—Houston [1st Dist.] May 21, 2013, no pet.) (mem. op.) (plaintiff did not preserve complaint that Texas Civil Practice and Remedies Code section 74.351 was unconstitutional, where he did not "present to the trial court any arguments based on the constitutionality of" statute).

Harris did not raise her constitutional complaint in the trial court. *See* TEX. R. APP. P. 33.1(a). We thus hold that she has not preserved for appeal her argument that Texas Civil Practice and Remedies Code section 74.251(a) is unconstitutional as applied to her. *See Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 222 (Tex. 2002); *Tex. Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex. 2001) ("[A]s a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal." (internal quotations omitted)).

## D.    Statute of Repose

Harris also asserts that the statute of repose in Texas Civil Practice and Remedies Code section 74.251(b) excepts her from the applicable statute of limitations and that she brought her health care liability claim against Dr. Kareh within the "ten-year repose period." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(b)

Texas Civil Practice and Remedies Code section 74.251(b) is a statute of repose which provides that a health care liability claim must be brought "not later than [ten] years after the date of the act or omission that gives rise to the claim." *Id.*; *see also Edwards v. Phillips*, No. 04-13-00725-CV, 2015 WL 1938873, at *7 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). The statute of repose fixes an outer limit beyond which no health care liability claim can be maintained. *See*

*Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P. v. Rankin*, 307 S.W.3d 283, 286–87 (Tex. 2010). A statute of repose does not extend an applicable statute of limitations period. *See Styers v. Harris Cty.*, 838 S.W.2d 955, 956 (Tex. App.— Houston [14th Dist.] 1992, writ ref'd).

Here, Harris did not present her statute-of-repose argument to the trial court. *See* TEX. R. APP. P. 33.1(a); *see also Davis*, 542 S.W.3d at 21 ("Rule 33.1 requires the appealing party to adequately raise issues before the trial court to give the trial court notice of [the party's] complaint."). We thus hold that she has not preserved for appeal her argument that the statute of repose in Texas Civil Practice and Remedies Code section 74.251(b) excepts her from the applicable statute of limitations. *See Bushell*, 803 S.W.2d at 712.

We also note that section 74.251(b)'s "ten-year repose period has no purpose unless" an exception to the two-year statute of limitations period applies. *Walters*, 307 S.W.3d at 298. And we have already concluded that the open courts exception to the two-year statute of limitations period does not apply here. Nor has Harris raised any other purported "exception" to the statute of limitations. *See id.*; *see also Molinet v. Kimbrell*, 356 S.W.3d 407, 416 (Tex. 2011) (noting Texas Supreme Court has recognized fraudulent concealment and open courts exceptions to two-year statute of limitations). Thus, even if Harris had preserved her statute-of-repose

argument, the statute of repose in Texas Civil Practice and Remedies Code section 74.251(b) would not apply to this case. *See Walters*, 307 S.W.3d at 298.

**E.      Harris's Summary-Judgment Evidence**

Harris further asserts that "[i]t is not clear" whether the trial court granted Dr. Kareh's objections to her summary-judgment evidence, but if the trial court failed to consider her evidence when ruling on Dr. Kareh's summary-judgment motion, the trial court erred.

We review a trial court's ruling on the admission or exclusion of summary-judgment evidence for an abuse of discretion. *Holland v. Mem'l Hermann Health Sys.*, 570 S.W.3d 887, 893–94 (Tex. App.—Houston [1st Dist.] 2018, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Bowie Mem'l Hos. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). When reviewing matters committed to the trial court's discretion, a court of appeals may not substitute its own judgment for that of the trial court. *Id.*

In the trial court, Harris attached to her summary-judgment response documents from the Social Security Administration, records from Kinghaven Counseling Group, a report prepared by Dr. Engstrand dated April 12, 2017, and a declaration by her adult daughter. Dr. Kareh objected to Harris's summary-judgment evidence on many grounds. For instance, Dr. Kareh asserted

that the documents from the Social Security Administration were unauthenticated, "not sworn or certified," contained conclusory statements unsupported by the referenced documents and exhibits, contained hearsay, and did not "address the qualifications, if any, of the author [of the Social Security Administration documents] . . . or the alleged experts that the author cite[d]." Dr. Kareh further asserted that the records from the Kinghaven Counseling Group contained hearsay and the report prepared by Dr. Engstrand "fail[ed] to meet Chapter 74's threshold expert requirements" and contained conclusory and contradictory opinions unsupported by facts in the record. Moreover, Dr. Kareh asserted that the declaration by Harris's adult daughter contained hearsay and the daughter had "no qualifications to opine [as to] whether or not [Harris] ha[d] suffered from mental incapacity since 2009."

The record does not contain any ruling by the trial court on Dr. Kareh's objections, and there is no support in the record for Harris's assertion that the trial court failed to consider her summary-judgment evidence when it rendered summary judgment in favor of Dr. Kareh. *See* TEX. R. CIV. P. 166a(c) (summary judgment will be rendered on evidence on file at time of hearing); *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (trial court can grant summary judgment, without considering objections, if it finds that evidence did not generate genuine issue of material fact); *Wuxi Taihu Tractor Co. v. York Grp., Inc.*, No. 01-13-00016-CV,

2014 WL 6792019, at *11 (Tex. App.—Houston [1st Dist.] Dec. 2, 2014, pet. denied) (mem. op.) ("A trial court considers the pleadings and summary-judgment evidence on file at the time of the hearing, or filed thereafter and before judgment with permission of the court." (internal quotations omitted)); *see also Delfino v. Perry Homes*, 223 S.W.3d 32, 35 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (ruling on summary-judgment motion does not imply ruling on objections to summary-judgment evidence). Because the record does not support Harris's assertion that the trial court erroneously granted Dr. Kareh's objections to her summary-judgment evidence, we do not consider this argument as a ground for reversal of the trial court's summary-judgment decision. *See Wakefield v. Ayers*, No. 01-14-00648-CV, 2016 WL 4536454, at *13 (Tex. App.—Houston [1st Dist.] Aug. 30, 2016, no pet.) (mem. op.) (record contained no support for appellant's assertion that trial court refused to consider summary-judgment evidence when it rendered summary judgment); *see also Huston*, 434 S.W.3d at 636 (appellant bears burden to bring forward on appeal sufficient record to show error committee by trial court); *Thomas v. Univ. of Tex. Med. Branch at Galveston*, Nos. 01-03-00471-CV, 01-03-00472-CV, 2004 WL 1516456, at *3 (Tex. App.—Houston [1st Dist.] July 8, 2004, no pet.) (mem. op.) (overruling challenge where record did not support appellant's factual assertions).

In sum, Dr. Kareh met his burden of establishing, as a matter of law, that Harris's health care liability claim against him was barred by the statute of limitations. And Harris failed to raise a fact issue in avoidance of the statute of limitations. We thus hold that the trial court did not err in granting Dr. Kareh summary judgment on limitations grounds.

We overrule Harris's third issue.

## New Trial Following Summary Judgment

In her fourth issue, Harris argues that the trial court erred in denying her motion for new trial because her summary-judgment evidence constituted "proper summary[-]judgment evidence," she attached "authenticated [Social Security Administration] documents evidencing her disability" to her motion, and the purported violation of the open courts provision in the Texas Constitution justified a new trial for Harris.

We review the trial court's denial of a motion for new trial for an abuse of discretion. *See Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009). In other words, the court's ruling on the motion will not be disturbed on appeal absent a showing of an abuse of discretion. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex. 1984). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to guiding rules and principles. *See Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997).

In her motion for new trial, Harris mainly argued that the trial court should grant her a new trial because Dr. Kareh's objections to her summary-judgment evidence—the documents from the Social Security Administration, records from Kinghaven Counseling Group, the report prepared by Dr. Engstrand dated April 12, 2017, and the declaration by Harris's adult daughter—were misplaced, her evidence constituted competent summary-judgment evidence, and the trial court should have considered her evidence in making its summary-judgment decision. Harris attached to her motion an "authenticated copy" of the Social Security Administration documents.[20]

As noted, the record does not contain any ruling by the trial court on Dr. Kareh's objections to Harris's summary-judgment evidence, and nothing in the record indicates that the trial court failed to consider Harris's summary-judgment evidence, including the unauthenticated version of the documents from the Social Security Administration, when it rendered summary judgment for Dr. Kareh. *See* TEX. R. CIV. P. 166a(c) (summary judgment will be rendered on evidence on file at time of hearing); *Seim*, 551 S.W.3d at 166 (trial court can grant summary judgment, without considering objections, if it finds that evidence did not generate a genuine issue of material fact); *Wuxi Taihu Tractor Co.*, 2014 WL 6792019, at *11; *see also*

---

[20]     Harris had previously attached an unauthenticated copy of the same documents from the Social Security Administration to her response to Dr. Kareh's motion for summary judgment.

*Delfino*, 223 S.W.3d at 35 (ruling on summary-judgment motion does not imply ruling on objections to summary-judgment evidence). Because the record does not show that the trial court did anything besides consider Harris's summary-judgment evidence, despite any objection by Dr. Kareh, in reaching its summary-judgment decision, we hold that the trial court did not err in denying Harris's motion for new trial on such a basis. *See Huston*, 434 S.W.3d at 636 (appellant bears burden to bring forward on appeal sufficient record to show error committee by trial court).

Harris also asserted in her motion for new trial that the open courts provision in the Texas Constitution prevented the two-year statute of limitations from barring her claim against Dr. Kareh because she was incapacitated and "had no memory of [him] . . . treating her until . . . years later." Here, we have already concluded that the open courts exception to the two-year statute of limitations does not apply. Thus, we also hold that the trial court did not err in denying Harris's motion for new trial on such a basis.

We overrule Harris's fourth issue.

**Harmless Error**

In her second issue, Harris argues that the trial court erred in dismissing her health care liability claim against North Cypress Medical because North Cypress Medical "objected to the wrong expert report," the September 6 report identified the standard of care and how it was not met, and the September 6 report offered an

opinion on causation. (Emphasis omitted.) Harris further asserts that she should be permitted to cure any deficiencies in the September 6 report.

Generally, we review a trial court's decision on a motion to dismiss a health care liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.). But even if we were to presume error here, the erroneous ruling by the trial court would only require reversal if a review of the record revealed that the error was harmful. *See Sw. Energy Prod. Co. v. Berry–Helfand*, 491 S.W.3d 699, 728 (Tex. 2016); *Harris*, 2018 WL 3233329, at \*4; *see also G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (harmless error rule applies to all errors). This is because the harmless error rule states that, before reversing a judgment because of an error of law, the reviewing court must find that the error amounted to such a denial of the appellant's rights as was reasonably calculated to cause and probably did cause "the rendition of an improper judgment," or that the error "probably prevented the appellant from properly presenting the case [on appeal]." *Magee*, 347 S.W.3d at 297 (alteration in original) (internal quotations omitted); *see also* TEX. R. APP. P. 44.1(a); *Harris*, 2018 WL 3233329, at \*4. It is the complaining party's burden to show harm on appeal. *Harris*, 2018 WL 3233329, at \*4; *Bowser v. Craig Ranch Emergency Hosp. L.L.C.*, No. 05-16-00639-CV, 2018 WL 316880, at \*2 (Tex. App.—Dallas

Jan. 8, 2018, no pet.) (mem. op.); *see also Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 667 (Tex. 2009) (applying harm analysis to claim trial court erred in discovery ruling and noting it is complaining party's burden to show harm).

In a previous appeal before this Court involving a health care liability claim brought by Harris, Harris asserted that the trial court erred in dismissing her health care liability claim against Methodist Downtown because she had served it with an adequate expert report. *See Harris*, 2018 WL 3233329, at *1–4. In that case, as in the instant one, Harris alleged that she was injured in a car accident in August 2009, she was first treated by Dr. David Chiu at Methodist Downtown, and she later sought treatment outside Methodist Downtown. *Id.* at *1. In 2015, Harris sued, among others, Dr. Chiu for "failing to advise her that she needed surgery to remove the cavernous angioma" with which she was eventually diagnosed. *Id.* Later, Dr. Chiu moved for summary judgment, arguing that he was entitled to judgment as a matter of law because the Harris's claim against him was barred by the applicable statute of limitations. *Id.* at *1–2; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a). The trial court granted Dr. Chiu summary judgment, and Harris did not appeal the trial court's summary-judgment decision following the court's severance order. *See Harris*, 2018 WL 3233329, at *1–5.

Later, Harris added Methodist Downtown to her suit, seeking to hold the hospital liable for the negligence of Dr. Chiu. *See id.* at *2. Specifically, Harris

brought a health care liability claim against Methodist Downtown, based on a theory of vicarious liability, alleging that Dr. Chiu had failed to choose an appropriate procedure to treat Harris's condition, failed to consult a specialist, failed to properly diagnose Harris's condition, and failed to treat Harris's condition. *Id.* Methodist Downtown moved for summary judgment on Harris's claim, arguing that it was entitled to judgment as a matter of law because the trial court had granted Dr. Chiu summary judgment on limitations grounds and that barred, as a matter of law, Harris's ability to hold the hospital vicariously liable for Dr. Chiu's alleged negligence. *Id.* Methodist Downtown also objected to Harris's expert reports and requested that the trial court dismiss with prejudice Harris's health care liability claim against it for failure to file an adequate expert report. *Id.* at *3. The trial court sustained Methodist Downtown's objection to Harris's expert reports and dismissed with prejudice Harris's health care liability claim against it. *Id.* Harris then appealed, asserting that the trial court erred in dismissing her claim against Methodist Downtown because she had served an adequate expert report on the hospital. *Id.* at *3–4.

On appeal, this Court presumed that the trial court erred in sustaining Methodist Downtown's objection to Harris's expert reports and in dismissing Harris's health care liability based on the failure to serve an adequate expert report. *Id.* at *4. The Court then engaged in a harmless error analysis. *Id.* at *4–6. In doing

so, we explained that even if the trial court had erred, Harris could never prevail on her vicarious liability claim against Methodist Downtown based on Dr. Chiu's alleged negligence because Dr. Chiu had obtained summary judgment on Harris's health care liability claim against him by establishing that Harris's claim was barred by the statute of limitations. *Id.* at *5. In other words, because an employer cannot be vicariously liable in tort when the liability against its employee or agent is barred, as a matter of law, Methodist Downtown could not be held vicariously liable for the alleged negligence of Dr. Chiu. *Id.* Thus, we concluded that "[i]t would be meaningless and without legitimate purpose to reverse the trial court's judgment when" Harris's claim against Methodist Downtown could not, as a matter of law, provide her recovery against the hospital. *Id.* Accordingly, we held that the trial court's granting of summary judgment for Dr. Chiu rendered harmless any error by the trial court in dismissing Harris's claim against Methodist Downtown based on an inadequate expert report, and we affirmed the judgment of the trial court. *Id.* at *5–6.

Here, we are presented with the same situation as in Harris's previous appeal. In her petition, Harris alleged that on August 21, 2009, she was injured in a car accident. Then, on September 26, 2010, she suffered a stroke and was taken to North Cypress Medical where Dr. Kareh and another doctor treated her. Dr. Kareh and the other North Cypress Medical doctor diagnosed Harris with a cavernous angioma,

but surgery was not performed. Instead, Harris was "placed on medication[s]." On January 24, 2011, Harris saw Dr. Kareh, but he did not recommend surgery or refer her to a specialist. Dr. Kareh told Harris to continue participating in physical therapy and to schedule another appointment with him in six weeks. According to Harris, she then got worse. Harris brought health care liability claims against Dr. Kareh for negligence, and North Cypress Medical, based on a theory of vicarious liability, alleging that Dr. Kareh failed to choose an appropriate procedure to treat Harris's condition, failed to refer Harris to a specialist, failed to properly diagnose Harris's condition, failed to treat Harris's condition, and failed to obtain Harris's consent for treatment after informing her of the risks associated with that treatment.

Later, Dr. Kareh moved for summary judgment, arguing that he was entitled to judgment as a matter of law because Harris's claim against him was barred by the applicable statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a). The trial court granted Dr. Kareh summary judgment, and we have held on appeal that the trial court did not err in doing so. *See supra*. So, because Harris's health care liability claim against Dr. Kareh is barred as a matter of law, she can never prevail on her claim for vicarious liability against North Cypress Medical, as it depends on her direct health care liability claim against Dr. Kareh. *See Harris*, 2018 WL 3233329, at *4–6; *see also Magee*, 347 S.W.3d at 297–98. Under such circumstances, reversal would be meaningless and without a legitimate purpose

when Harris's vicarious liability claim cannot, as a matter of law, provide her recovery against North Cypress Medical. *See Harris*, 2018 WL 3233329, at \*5; *see also Magee*, 347 S.W.3d at 297–98; *Zarzosa v. Flynn*, 266 S.W.3d 614, 621 (Tex. App.—El Paso 2008, no pet.) (reversal is meaningless when recovery precluded as matter of law). Thus, presuming without deciding that the trial court erred in sustaining North Cypress Medical's objection to the September 6 report and in dismissing Harris's health care liability against the hospital for failure to serve an adequate expert report, we hold that the trial court's granting of summary judgment for Dr. Kareh based on limitations rendered harmless any error by the trial court in dismissing Harris's vicarious liability claim against North Cypress Medical. *See Harris*, 2018 WL 3233329, at \*4–6.

We overrule Harris's second issue.

## Mediation Order

In her first issue, Harris argues that the trial court erred dismissing her health care liability claims against Dr. Kareh and North Cypress Medical because the trial court signed a mandatory mediation order with which Dr. Kareh and North Cypress Medical did not comply.

As noted above, to preserve a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion and the trial court either ruled on the party's request, objection, or motion,

or refused to rule, and the party objected to that refusal. TEX. R. APP. P. 33.1(a). If a party fails to do this, error is not preserved and the complaint is waived. *Bushell*, 803 S.W.2d at 712; *see also Davis*, 542 S.W.3d at 21 ("Rule 33.1 requires the appealing party to adequately raise issues before the trial court to give the trial court notice of [the party's] complaint.").

Harris did not argue in the trial court that the trial court would err in dismissing her health care liability claims against Dr. Kareh and North Cypress Medical because neither defendant had complied with the court's Order of Referral for Mediation.[21] *See* TEX. R. APP. P. 33.1(a). We thus hold that Harris has not preserved for appeal her argument that the trial court erred in dismissing her health care liability claims against Dr. Kareh and North Cypress Medical because the trial court signed a mandatory mediation order with which they did not comply. *See Wilson v. Colonial Cty. Mut. Ins. Co.*, No. 05-14-00220-CV, 2015 WL 1886862, at *4 (Tex. App.—Dallas Apr. 27, 2015, no pet.) (mem. op.) (appellant did not preserve complaint trial court erred by not conducting court-ordered mediation); *Bosch v. Dall. Gen. Life Ins. Co.*, No. 14-04-00661-CV, 2005 WL 757254, at *6 (Tex. App.—Houston [14th Dist.] Apr. 5, 2005, no pet.) (mem. op.) (appellant did not preserve complaint trial

---

[21] We express no opinion as to whether any of the parties complied with the trial court's Order of Referral for Mediation.

court erred in considering summary-judgment motion where parties had agreed to mediation).

## Conclusion

We affirm the trial court's order granting North Cypress Medical's objections and motion to dismiss Harris's health care liability claim against it. And we affirm the trial court's order granting Dr. Kareh summary judgment.


Julie Countiss
Justice

Panel consists of Justices Keyes, Goodman, and Countiss.